## Hetty B. Hart's Appeal from Probate.

*H*, an unmarried woman residing in this state, owned by inheritance a large quantity of lands in the state of Ohio, which were in the care of sundry agents residing there. In the year 1839, while so owning the lands, she gave to *B*, residing in this state, a power of attorney authorizing him to take charge of the lands, to sell them, to change, renew or settle contracts with regard to them, to receive all moneys derived from them, and to do every thing necessary and proper in the management and sale of them that she could do herself. *B* entered upon the duties of the agency, and continued therein till his death in 1861. He resided during all the time in this state and managed the business through the local agents, who made remittances to him. In 1841 he accounted to *H* for all moneys received to that date and paid over the balance then in his hands. No settlement was made after that date, but *B* continued to receive money from the local agents down to the time of his death. Held, that his relation to *H* was that of an ordinary collecting agent, that upon the receipt of money he became immediately liable for it to her, and that the statute of limitations began at once to run against such liability, and that his estate was liable to account to *H* only for such moneys as were received by him during the six years preceding his death.

The statute of limitations is a beneficial one, and it is the policy of our law to sustain it. The lapse of time is regarded as furnishing presumptive evidence of payment, rather than as in itself an arbitrary bar to an unsatisfied claim.

And the statute, though in terms applicable to actions only, applies to all claims which may be the subjects of actions, however presented.

Where a party appealing from the disallowance of a claim by commissioners on an insolvent estate, in assigning upon the record in the superior court his reasons of appeal, alleges that the claim is a book debt, he will be held to such rules with regard to the case as are applicable to the action of book debt, although the claim might have been made the subject of a bill in equity.

APPEAL from the disallowance of a claim by the commissioners on the estate of Sumner Bull, deceased. The case was referred to an auditor by the superior court, who made a special report of the facts, substantially as follows :—

Hetty B. Hart, the appellant, was on the 30th of May, 1839, the owner of a large amount of real estate in Ohio, which she inherited from her father, a portion of which was then under contract of sale and occupied by the purchasers. On that day she executed to Sumner Bull, the deceased, a general power of attorney, authorizing him to take charge of all the property, to sell the real estate, to change, renew or settle the contracts, to receive all sums of money due or accruing from the business, and to do everything necessary and proper to be done in relation to the property in the name of Miss Hart, in as full and ample a manner as she could do herself. Mr. Bull accepted the appointment and undertook to discharge the duties thereof. He continued to act under the appointment to the 6th of May, 1861, when he died. Mrs. Elizabeth Hart, the mother of Hetty B. Hart, died August 31st, 1843. At the time of her decease she was the owner of other real estate in Ohio, and was interested in contracts for the sale of real estate amounting to a large sum. Miss Hart, as the executrix and residuary legatee of her mother, succeeded to this estate, and she afterwards, on the 18th of June, 1851, by another power of attorney of that date, authorized Mr. Bull to take charge of this property to the same extent that she could do herself.

The property of Miss Hart in the lifetime of her father was in the care of agents residing near it in Ohio; and Mr. Bull, with the knowledge and approbation of Miss Hart, continued these persons as the agents of Miss Hart, and upon the decease of one of these agents and the resignation of another other persons were appointed in their places. Some of these agents held appointments signed by Miss Hart personally, and others held appointments signed " Hetty B. Hart, by Sumner Bull, agent." These agents attended to the business of selling lands in Ohio, looking after the land contracts, the payment of taxes, and the collecting of debts. The deeds for the con-

veyance of lands so sold were executed by Mr. Bull. They corresponded entirely with him, made their remittances to him and their settlements with him, and rendered no account to Miss Hart. He had the entire direction of these agents and the supervision of their accounts. Miss Hart was satisfied with the manner in which the business was conducted, and never inquired of the agents in Ohio respecting her business intrusted to their care. The books and accounts of these agents were at all times in a condition to show their transactions truly.

Mr. Bull rendered an account of his transactions in Ohio to Miss Hart on the 12th of March, 1841, and then paid to her the balance of money in his hands received by him in the business. I do not find there was any other general settlement made between Mr. Bull and Miss Hart.

I find that Mr. Bull's collections and receipts in this agency, from March 12th, 1841, to the 6th day of May, 1861, amounted to the sum of $137,323.79, and that his payments to Miss Hart, and his disbursements for her benefit during that time, amounted to the sum of $99,784.64, leaving a balance of $37,539.15, for which no satisfactory account is shown. The balance of interest on these receipts and disbursements to October 10th, 1864, amounts to the sum of $30,981.33. I find that the Ohio agents collected of the above amount the sum of $98,011.67, and that Mr. Bull personally collected the sum of $39,312.12. A portion of the money collected by the Ohio agents was paid to Mr. Bull in Ohio, and was, with the money collected by Mr. Bull personally, paid over to Miss Hart. The balance of the collections of the Ohio agents was remitted to Mr. Bull by drafts, and all the money was received by him in the regular and ordinary course of business. The drafts were deposited by him with his bankers in New York, with his own money, upon which he received interest in the settlement of his accounts with them. I do not find that he was guilty of any artifice, deceit or fraud in retaining this balance, except what is legally inferable from the fact that he did not keep regular and proper accounts, and that he has not paid or accounted to Miss Hart for all the

money he received.   I find that the money received by him as
aforesaid, after the 6th day of May, 1855, besides certain
drafts and sums specifically applied to or for the use of Miss
Hart, amounts in the whole to the sum of $11,976.47.   The
interest on these several sums to the 10th day of October,
1864, amounts to the sum of $5,319.77.

In case the court shall be of opinion that the statute of lim-
itations runs against the claim of Miss Hart upon the facts
aforesaid, then I find that the estate of Sumner Bull is
indebted to Miss Hetty B. Hart $11,976.47, and interest to
October 10th, 1864, $5,319.77, making in all the sum of
$17,296.24, for moneys received by him in his agency.   But
if the court shall be of opinion that the claim of Miss Hart,
upon the facts above found, is not within the statute of limi-
tations, then I find that the estate of Sumner Bull is indebted
to Miss Hetty B. Hart $37,539.15, and interest computed to
the 10th day of October, 1864, $30,981.33, making in all the
sum of $68,520.48.

The report was accepted, and the case reserved upon the
facts so found for the advice of this court.

The claim was presented to the commissioners in the follow-
ing form :—

" Estate of Sumner Bull, deceased, to Miss Hetty B. Hart,
Dr.

" To moneys collected by said Bull in his lifetime, between
the 1st day of January, 1839, and the date of his decease, as
the agent of the said Hetty B. Hart, and not paid over to her
or in any manner accounted for, and a more particular
account whereof can not now be given, $145,000, with inter-
est on said sum so collected."

The reasons of appeal assigned by the appellant upon the
record in the superior court were as follows :—

"1. That the said account presented to the commissioners
was and is a true and just account which the said Sumner
Bull deceased in his lifetime owed to the said appellant by
book, as by the book of the said appellant ready in court to be
produced appears, and that the said claim so disallowed by

the said commissioners is of such a nature that an action of book debt might be instituted to recover the same.

" 2. That the said commissioners rejected and disallowed the same without law or right; that they should have allowed the same, and erred in disallowing the same."

*McFarland*, for the appellant.

1. Commissioners on an insolvent estate have equitable as well as legal powers. *Brown* v. *Slater*, 16 Conn., 195; *Ashmead's Appeal from Probate*, 27 id., 241; *American Board of Commissioners' Appeal from Probate*, id., 353. The claim of the appellant, if Mr. Bull were living, would properly be enforced by a bill in equity calling upon him to disclose and account, and it stands now before the court as if it were brought up by a bill in equity.

2. The statute of limitations is no bar to the claim whether it be regarded as presented in a legal or equitable form. The case is one of a continuing and confidential agency, and the same rules are applied to such an agency as to a trust. In *Lord Hardwick* v. *Vernon*, 14 Ves., 505, the Chancellor says: "I can not discover any difference in the implied contract supposed to arise out of the duties of trustees, assignees and executors, though differing widely in character, and the implied contract of a receiver and agent, who is bound faithfully, diligently and accurately to account, at least when called upon, and not to suppress, conceal or overcharge." To the same effect see *Pearse* v. *Green*, 1 Jac. & Walk., 140. In cases of concurrent jurisdiction the construction of the statute of limitations is the same at law and in equity. *Sherwood* v. *Sutton*, 5 Mason, 146. And in neither jurisdiction is the statute applied to a trust or to a confidential agency. Lewin' on Trusts, 610; 1 Story Eq. Jur., § 323; Hill on Trustees, 264; *Norton* v. *Ladd*, 22 Conn., 203, 206; *Kane* v. *Bloodgood*, 7 Johns. Ch., 90; *Farnam* v. *Brooks*, 9 Pick., 213, 225, 247; *Sollee* v. *Croft*, 7 Rich. (Eq.,) 41; *Long* v. *Cason*, 4 id., 60; *Keaton* v. *Greenwood*, 8 Geo., 97; *Johnston* v. *Humphreys*, 14 Serg. & R., 394; *Kimball* v. *Ives*, 17 Verm. 430; *Decouche* v. *Savetier*, 3 Johns. Ch., 190; *Goodrich* v. *Pen-*

*dleton,* id., 384 ; *Coster* v. *Murray,* 5 id., 522 ; *Murray* v. *Coster,* 20 Johns. 576 ; *Rix* v. *Heirs of Smith,* 8 Verm., 365 ; *Evarts* v. *Nason's Estate,* 11 id., 122 ; *Mather* v. *Bennett,* 1 Fost., 204 ; *Fox* v. *Cash,* 11 Penn. S. R., 211 ; *Simms* v. *Smith,* 11 Geo., 195 ; *Hopkins* v. *Hopkins,* 4 Strob. Eq., 207 ; *Parris* v. *Cobb,* 5 Rich. Eq., 452 ; *Blount* v. *Robeson,* 3 Jones Eq., 75 ; *Lord Hardwicke* v. *Vernon,* 4 Vesey, 411 ; *S. C.,* 14 id., 504 ; *Lady Ormond* v. *Hutchinson,* 13 id., 47 ; *Buckner* v. *Calcote,* 28 Miss., 575 ; *Callis* v. *Tolson's Exrs.,* 6 Gill & J., 80 ; *Oliver* v. *Piatt,* 3 Howard, 333 ; *Wedderburn* v. *Wedderburn,* 2 Keen, 722 ; *Beaumont* v. *Boultbee,* 5 Ves., 485 ; *Lord Chedworth* v. *Edwards,* 8 id., 46 ; *McDonald* v. *McDonald,* 1 Bligh, 315 ; *Makepeace* v. *Rogers,* 11 Jurist, *N. S.,* 215. To enable a person standing in such a confidential relation to take the benefit of the statute of limitations he must openly and explicitly disavow and disclaim the trust, and thus put himself into a position adverse to the party whom he has been representing, after which time the claimant may be compelled to prosecute his claim within the period limited by statute for other claims. *Teller's Lessee* v. *Eckert,* 4 Howard, 295 ; *Whitehead* v. *Lord,* 11 Eng. L. & Eq., 587 ; *Scott* v. *Haddock,* 11 Geo., 258 ; *Moffatt* v. *Buchanan,* 11 Humph., 369. And in every case of continuing agency it is necessary for the principal to make demand before he can sustain a suit for moneys in the agent's hands, and the statute does not begin to run until a right of action has been thus acquired. *Armstrong* v. *Smith,* 3 Blackf., 251 ; *Halden* v. *Crafts,* 4 E. D. Smith, 490 ; *Ferris* v. *Paris,* 10 Johns., 285 ; *Taylor* v. *Bates,* 5 Cowen, 379 ; *Hays* v. *Stone,* 7 Hill, 128 ; *Staples* v. *Staples,* 4 Greenl., 532 ; *Krause* v. *Dorrance,* 10 Penn. S. R., 462 ; *Walradt* v. *Maynard,* 3 Barb., 584 ; *Satterlee* v. *Frazer,* 2 Sandf. Sup. Ct., 142 ; *McNair* v. *Kennon's Exrs.,* 3 Murph., 144 ; *Lever* v. *Lever,* 1 Hill Ch., (So. Car.,) 47 ; *Taylor* v. *Spears,* 3 English, 440 ; *Buchan* v. *James,* 1 Speers' Eq. R., 375, 384 ; *Buchanan* v. *Parker,* 5 Ired. (Law,) 597 ; *Paschall* v. *Hall,* 5 Jones Eq., 108 ; *Merle* v. *Andrews,* 4 Texas, 200 ; *Sawyer* v. *Tappan,* 14 N. Hamp., 352 ; *Hutch ins* v. *Gilman,* 9 id., 360 ; *Judah* v. *Dyott,* 3 Blackf., 324 ;

*Topham* v. *Braddick*, 1 Taunt., 571. Although the auditor has found that there was no fraud except such as the law would infer from the facts, yet it is a clear case for such a legal inference. The true rule is laid down in *McDowell* v. *Potter*, 8 Penn. S. R., 190, as follows:—"Before an agent can be permitted to avail himself of the statute he must prove that he has performed his duty. His omission to do so amounts to such concealment of the state of the business as in contemplation of law is such a fraud as deprives him of the protection of the statute." See also remarks of Storrs, J., as to what constitutes fraud in equity, in *Story* v. *Norwich & Worcester R. R. Co.*, 24 Conn., 113.

*T. C. Perkins* and *O. S. Seymour*, with whom was *C. Chapman*, for the appellees.

We contend that the claim of the plaintiff is of such a character that the statute of limitations runs upon it. However complicated the claims may have been before the auditor, the matter now in dispute is exceedingly simple. The auditor finds that " a portion of the money collected by the Ohio agents was paid to Mr. Bull in Ohio, and was, with the money collected by Mr. Bull *personally*, paid over to Miss Hart." All the money collected by Mr. Bull personally, and all the money paid to him by the Ohio agents in Ohio, is satisfactorily accounted for and found to have been faithfully paid over to her. The balance of her claim, which is the subject of this inquiry, is for remittances to Mr. Bull from the Ohio agents by drafts on which the money was received by him in the regular course of business. These moneys were received from time to time between the 12th of March, 1841, (the date of a general settlement between the parties,) and the 6th of May, 1861, the day of Mr. Bull's death. The whole amount so received, of which no satisfactory account is shown, was $37,539.15, whereof $25,572.68 was received more than six years prior to Mr. Bull's death. The question now under consideration relates to this $25,562.68, so received, and interest on it; $25,661.56, making the amount dependent upon the statute of limitations $51,224.24. The defendants insist:—

(1st.) That this money was rightfully received by Mr. Bull. (2d.) That he had no power or duty in respect to it except to receive it and deliver it to Miss Hart. (3d.) That it was his duty to pay to her the money so received without delay. (4th.) That if he failed so to pay it the appropriate remedy was by action of book debt or assumpsit for money had and received. (5th.) That the plaintiff's claim for the money so received is one on which the statute of limitations runs. The first three points depend upon the question what authority was conferred on Mr. Bull by Miss Hart. This authority is fully set forth by the auditor in his report. Under the power of May 30, 1839, Mr. Bull is authorized " to take charge of all said property," " to sell the real estate, to change, renew or settle said contracts," " to receive all sums of money due or accruing from said business," and " to do everything necessary or proper to be done in relation to said property " in the name of Miss Hart, " in as full and ample a manner as she could do herself." Under the power of June 18, 1851, Mr. Bull is authorized to take charge of this property to the same extent that Miss Hart could do herself. But Miss Hart had other agents. The auditor finds that the property in the life-time of her father was in the care of agents residing near it in Ohio. These persons were continued as her agents. They attended to the selling of lands, to the land contracts, to the payment of taxes and the collecting of debts, but the deeds for the conveyance of the land sold were executed by Mr. Bull. Mr. Bull then had two distinct classes of duties as agent. (1st.) He himself personally collected $39,312.12 from the persons in Ohio to whom the land was sold. This business was done by himself and had no connection with the business of the other agents in Ohio. (2d.) He received the monies collected by the Ohio agents, and, as these agents attended to the payment of taxes, they remitted to Miss Hart, through Mr. Bull, the net proceeds of their collections. But the first class of duties may be laid out of the case, as all the moneys received under it are found to be paid over. It is only with moneys remitted by the Ohio agents that we have to do, and we say that no duty or authority in respect to them was given to Mr.

Bull but the simple duty of paying them over to Miss Hart. He was not appointed her banker or depositary of them for safe keeping, or steward or bailiff of them. The plaintiff's claim for these moneys is recoverable at law by an action of book debt or assumpsit, and only by these actions. These actions and this claim are within the statute of limitations. It was insisted before the auditor that Mr. Bull was a trustee, and that the statute does not run in favor of a trustee. But it is clearly not a case of express trust; and as to cases of merely constructive trusts, or cases which are treated for some purposes as implied trusts, to which however legal remedies are applicable, the doctrine can not be admitted that the statute of limitations does not embrace them. *Robinson* v. *Hook*, 4 Mason, 150 ; *Farnam* v. *Brooks*, 9 Pick., 212 ; *Sturt* v. *Wellish*, 2 Atk., 611 ; *Murray* v. *Coster*, 20 Johns., 583 ; *Roosevelt* v. *Mark*, 6 Johns. Ch., 289 ; *Young* v. *Cook*, 30 Miss., 320 ; *Finney* v. *Cockran*, 1 Watts & Serg., 112 ; *App* v. *Driesbach*, 2 Rawle, 302 ; *Lyon* v. *Marclay*, 1 Watts, 275 ; *Phalen* v. *Clark*, 19 Conn., 435. But it is claimed that Mr. Bull was Miss Hart's agent and received the money in a fiduciary capacity ; to which we reply, 1st, that the mere fact that he *received* the money as agent does not prevent the operation of the statute ; 2d, that Mr. Bull did not receive the moneys as hers, to keep for her, or as her bailiff or steward to expend for her. In this latter class of cases, while the agent is rightfully keeping the principal's money, there is no cause of action against the agent, and the case does not fall within the letter or spirit of the statute of limitations, because these statutes do not commence running until some cause of action has accrued.

To the argument that the statute does not run upon the plaintiff's claim because Mr. Bull was trustee, we reply further, that the argument is in direct contradiction to the plaintiff's reasons for appeal. Mr. Bull is there charged as debtor by book, and nothing else. To be a debtor by book the right to charge the moneys must have existed at the time of their receipt and arise in consequence of such delivery. *Terrill* v. *Beecher*, 9 Conn., 344. The only issue before the auditor

was upon these reasons for appeal. The auditor's finding is to be construed as a finding upon that issue, subject to the question arising upon the statute of limitations. Mr. Bull then, for the purposes of this question, must be treated as debtor by book for these moneys when they were delivered to him. If the moneys were received by Mr. Bull under such circumstances that they can be charged to him on book, they were not received by him as trustee or bailiff of the plaintiff, or as her steward, and if they were received as trustee or bailiff they can not constitute the ground of charge on book. If upon the facts found by the auditor the deceased was not indebted by book to the plaintiff, then judgment must be rendered upon the report for the defendant, for in that event the issue is found against the plaintiff. And it is to be noticed that the appointment of an auditor in the case is an acknowledgment that the claim is to be regarded as one at law and not in equity, and that it is founded, as the plaintiff has alleged in her reasons of appeal, upon a claim by book.

It was argued before the auditor that fraud was practised by Mr. Bull, and that by reason of the fraud the case is taken out from the operation of the statute. But the auditor in his report says that he does not find that Mr. Bull was guilty of any deceit or fraud in retaining the money received, except what is legally inferable from, (1,) the fact that he did not keep regular and proper accounts, (2,) that he has not paid or accounted to Miss Hart for all the money he received. The auditor does not find that he kept a false account, but that " he did not keep regular and proper accounts." Such a failure may result from ignorance, carelessness, too confident reliance upon memory, or defective education. It is not found that the plaintiff was thereby deceived or injured, or that it has any connection with her delay to bring her action in due time. His neglect to pay or account for all the money he received is to be taken as wrongful, and the forms of law impute a kind of technical fraud to the breach of every contract, but no actual fraud is supposed. Even if the failure to fulfill contracts arises from willful design to wrong another, it is no such fraud as can affect the operation of the statute of

limitations. These moneys were rightfully received by Mr. Bull. They were paid to him by Miss Hart's own agents, "whose books and accounts were at all times in a condition to show their transactions truly." The remittances were open and notorious by means of drafts on Ohio banks. There was no secrecy or concealment. If upon these facts a jury should find fraud the verdict would be set aside as against evidence, but this court is called on by the plaintiff to infer fraud where the auditor could not find it. In *Miller* v. *Welles*, 23 Conn., 21, this court declined to try the question of fact of fraud, although in that case the circumstances indicating fraud were substantial and weighty. That case on this point seems decisive. *Bank of Hartford County* v. *Waterman*, 26 Conn., 324; *Stearns* v. *Page*, 7 How., 819; *Carr* v. *Hilton*, 1 Curtis, 393; Angell on Limitations, § 187. In the case of *Smith* v. *Bishop*, 9 Verm., 110, the court requires, to take a case out of the statute, that there must be a distinct subsequent fraud, perpetrated after the cause of action arose, by which the party is kept in ignorance of his rights; and whether even such fraud would be sufficient is left unsettled.

We have now discussed the questions which seem to us properly to arise on the auditor's report. We suppose the auditor intended that if the statute runs, and the claim is within the statute, then in point of fact so much of the plaintiff's claim is outlawed as accrued six years before Mr. Bull's death. Whether the statute does or does not run is a question of law upon the facts; whether six years have in fact elapsed since the cause of action occurred is a question of fact. If however the question fairly arises whether upon the facts found the statute time has elapsed, we say the burden is on the plaintiff to show a cause of action arising within six years, and if the plaintiff claims that the cause of action did not accrue immediately upon the receipt by Mr. Bull of the money, the plaintiff must show why it did not. 2 Greenl. Ev., § 421; *Hurst* v. *Parker*, 1 Barn. & Ald., 92; *S. C.*, 2 Chitty R., 249; *Wilby* v. *Henman*, 2 Cromp. & Mees., 658; Roscoe's Dig. of Law of Ev., 432, 442. *Prima facie* money received by one for the use of another is to be paid over without delay.

Circumstances may indeed exist warranting the party in keeping it, either till demanded, as in case of deposits for safe keeping, or till some particular time, as in case of deposits depending upon wagers or contingencies, or until instructions as to the mode of remittance, as in cases where the party is expected to remit and not pay the money in person; but no such circumstances exist in this case. The authorities on this point are uniform. *Lillie* v. *Hoyt*, 5 Hill, 395; *Dale* v. *Birch*, 3 Camp., 347; *Brewster* v. *Van Ness*, 18 Johns., 133; *Jefferies* v. *Sheppard*, 3 Barn. & Ald., 696; *Clark* v. *Moody*, 17 Mass., 148; *Little* v. *Blunt*, 9 Pick., 490; *Nicholson* v. *Knowles*, 5 Madd., 47; *Sturges* v. *Bush*, 5 Day, 452; *Collins* v. *Benning*, 12 Mod., 444; *Coffin* v. *Coffin*, 7 Greenl., 298; *Buckner* v. *Patterson*, Little's Select Cas., 234; *Darnal* v. *Magruder*, 1 Har. & Gill, 439; *Coomer* v. *Little*, Cam. & Norw., 92; *Agnew* v. *Fetterman*, 4 Penn. S. R., 58; *Stafford* v. *Richardson*, 15 Wend., 302; *Dygert* v. *Crane*, 1 id., 534; *Clarke* v. *Reeder*, 1 Speers, 398; *Imperial Gas Light Co.* v. *London Gas Light Co.*, 10 Exch., 39. Whatever differences of opinion there may be in respect to an attorney at law, whether he is bound to pay over money received as soon as collected without special demand, there can be none as to persons collecting money who are not attorneys at law. *Glenn* v. *Cuttle*, 2 Grant Penn. Cas., 273; *Kinney's Exrs.* v. *McClure* 1 Rand., 284. In this case the plaintiff is a lady residing near Mr. Bull. He has an extensive agency in which he is receiving large sums for her. All the circumstances indicate that he was expected *in person* to pay over the money he collected. The case is not like that of a foreign factor, who after giving notice that he has collected the money may wait for advice as to the mode of remittance. His most important duty was to seek her and pay the money to her. The agents in Ohio paid their money to him for this sole purpose. It was their mode of remittance. He became the substitute for the mail or for the express company. And then the case finds " that Mr. Bull deposited these drafts with his bankers in New York, with his own money, upon which he received interest." If the plaintiff is right in claiming that the proceeds of these

drafts were not promptly paid to Miss Hart, then here is a diversion of these funds from their proper channel. The cause of action in respect to these moneys, if the plaintiff has any, surely arose upon the failure to pay them over to the rightful owner, and the alleged conversion of them to his own account. Angell on Limitations, chap. 16, § 10 ; *Buchan* v. *James*, 1 Speers' Ch., 375.

The statute of limitations has been repeatedly spoken of by our judges as a beneficial one, and our courts have inclined to sustain, rather than to evade it. It is regarded by us as founded upon a presumption of actual payment, of which the evidence has been lost, so that a claim that is barred by the statute comes before the court, not as a just claim that has never been paid and that is barred by an arbitrary rule, but as one that is presumed to have been paid, and therefore not entitled to the favor of the court. This statute is especially important to the estates of deceased persons, where the party who alone could have proved payment by his testimony or by facts with which he was familiar, is no longer able to speak. Were it not for this statute the door would be open to very great frauds upon such estates. While there is no need in this case of the aid of these general considerations in favor of the statute, yet if the court should regard the case as at all a doubtful one it ought to lean in favor of the application of the statute. This is the settled policy of our law. *Lord* v. *Shaler*, 3 Conn., 131; *Marshall* v. *Dalliber*, 5 id., 480 ; *Peck* v. *Botsford*, 7 id., 172.

*B. R. Curtis*, of Massachusetts, in reply.

This is a case where an action of account would lie. This action, as anciently defined, has been greatly extended in modern times, and now applies to any case of agency where there is a duty to account. Either book debt or account would lie here, and by the statute of 1855 a bill in equity will lie wherever account will. Insolvency does not affect the case. There is a form for the presentation of claims to the commissioners on an insolvent estate, but the substance of all these forms of action is preserved, as the subject matter of the

claim may require.   Thus the present claimant has all the rights she would have had if she had brought book debt, account, or a bill in equity.   The claim was presented simply as a claim against an agent for money received and not accounted for.   The case now before the superior court upon appeal stands precisely as it stood before the commissioners, and the superior court possesses the same powers as the commissioners.

But it is said that by our reasons of appeal we have abandoned our equitable claim.   But the first reason of appeal merely states that it was a proper subject of book account. This is true.   But it does not limit the claim to a book account. The second reason of appeal does not characterize the claim at all, but merely says that it was disallowed without law or right.   There is no waiver here of our equitable rights.

It is then said that an auditor was appointed.   It does not appear upon whose motion, or whether the court acted on its own motion.   The argument is that by this means the case went over to the law side of the court and can not be got back. But there were by law only two modes of having the facts settled, by a jury or by an auditor.   Both of these are on the law side of the court.   By choosing between them the party does not abandon his right to equitable relief.   The statute provides that when an auditor reports the facts the *appropriate judgment* shall be rendered.

Now as to the merits.   I attach no importance to the question whether we stand on equitable or legal ground, except in one respect, as to the effect of the statute of limitations on the ground of fraud.   The statute of limitations has been eulogized by the gentlemen on the other side, and especially in its application to deceased persons.   But the statute makes no distinction in favor of deceased persons.   It provides that a claim shall be barred in six years from the time when the right of action accrued.   But it does not say when a cause of action accrues.   This it leaves to the common law.   It can not be expected that the court will lay down a different rule as to when an action accrues in the case of a deceased per-

son, from that which would be applied in the case of a person living. The gentlemen could not ask it.

This was a highly confidential agency, covering a long time, a large amount and distant transactions, involving sub-agents; a power to do every thing in relation to the property that the principal could do. The agent undertook this duty and continued it twenty years. It was a *continuing* agency. It was not an authority to collect a single debt; not a single consignment of goods. It was not only designed to be, but was in fact, a continuing agency.

What do the counsel on the other side claim on this point? They say the money was rightfully received. This we admit. They then say that he had no power or duty in respect to the money except to receive it and pay it over to Miss Hart. This we entirely dissent from.

They contend that he probably paid the money received to Miss Hart, because he did pay to her what he received when he made journeys to Ohio. But I infer the contrary. Miss Hart would know of these journeys and would naturally expect to receive what he collected on them. But the remittances made to him by mail, which she knew nothing about, these he retained, every dollar. There is no evidence whatever that a dollar was paid to her.

As to his duty and power. It was his right and duty to keep money received by him to pay accruing taxes. Taxes were heavy—their prompt payment necessary. There must have been many disbursements necessary. The auditor finds that there were " disbursements for her benefit " by him.

Let us assume that Mr. Bull's intentions were all honest. We find that, in the beginning of the year 1855, six years before his death, he had $37,000 in his hands, and that in the six years following this sum was increased by $11,000. Now let us lay all fraud out of the case. Let us suppose that Mr. Bull honestly retained the money expecting to account; and further, that he notified Miss Hart of the amount of money he had in his hands. What then would be the case? It would be that of her letting her money lie in his hands—lie till she called for it. Was it ever heard that at the end of six

years the agent in such a case could refuse to pay over when called upon for payment? Could not Miss Hart say, why this has been my money all the while—it has lain in your hands with my assent—it was to lie till I called for it, and now I call for it?

It is claimed that if the case is to be treated as a book debt there must have been a complete cause of action when the charge was made. But this is not so. There need not be a right to sue. Goods are constantly charged on book which are sold on credit, perhaps a long credit, and no right of action accrues till the time of the credit has expired. *Hall* v. *Peck,* 10 Verm., 474; *Jackman* v. *Partridge,* 21 id., 558. These cases hold that a principal may charge a factor with goods when sold, but that a demand must be made before a right of action accrues. The latter case especially, in the principle which it lays down, covers the present one. It is there held that it is sufficient, to sustain a charge on book, if an obligation to account resulted directly from the transaction between the parties, and that the necessity of demanding payment before suit is no valid objection to the action of book debt upon such a charge.

Not a case cited on the other side goes so far as to hold that, in the case of a continuing agency, the principal can not go back more than six years.

I wish to call attention to a recent case in England, *Teed* v. *Beere,* 23 Law Times Reports, 26—a very strong case as to the non-application of the statute of limitations to such a case as this. A barrister's clerk received fees for his master and did not pay them over. It was held that the statute of limitations was no bar, because the money in the hands of the clerk was the master's money and there could be no adverse holding.

Suppose Mr. Bull had not died, and Miss Hart had now called on him to account. To account for what? For the last six years? Why no, for his whole agency. Why account for a part of the time and not for the whole? In every such agency there is an implied promise to account. But when the agent accounts, is it to be treated as a promise to account

for a part of his time, or for the whole time ? Clearly the latter.

They say Mr. Bull received no compensation. It does not appear that he was not allowed compensation. But clearly he ought to have received none. He kept no accounts at all. This is the first duty of an agent. But if he kept regular accounts the law would allow him compensation, even though there was no agreement for it. But compensation or no compensation, he was bound to discharge the duties of the agency with fidelity.

We now come to the last point in our case, in which we ask the court to make an exception of this case in the application of the statute of limitations on the ground of a fraudulent retention of the money, upon the principle laid down in *Phalen* v. *Clark*, 19 Conn., 435. Over $47,000 was received by Mr. Bull and retained by him. This all came to him through the mail, without any knowledge of Miss Hart, or anything to put her on inquiry. This was retained by him in known violation of his duty, or with her consent. If the latter it was clearly her money, and no right of action accrued till she called on him for the money. If the former it was clearly a fraud. It is to be considered that this was a case of peculiar confidence from intimate relationship—not between strangers. Also that he kept no proper accounts. Also that he did not account in fact for the money. I agree that there must be what the law calls a deception, a concealment, an illegal and immoral concealment. But was it not his duty to inform her that he had this money ? And if so is not his silence concealment, in both law and morals ? What is a fraudulent concealment ? A good definition is given by this very court, in *Miller* v. *Welles*, 23 Conn., 33. It is there laid down that the court will infer fraud from the abuse of confidence in certain relationships, and will set aside transactions as fraudulent where the confiding party has suffered from such confidence, although there is no proof of positive fraud or wicked intent. See also *In re Agricultural Cattle Ins. Co.*, 11 Law Times Reports, *N. S.*, 13, 15. If Mr. Bull had kept proper accounts every payment made by him would

have appeared and applied. If his books showed a balance due Miss Hart would it be tolerated that he should not be required to pay that balance? Could he draw a black line over a part, and refuse to account for anything back of it? Now shall he have an advantage from his own neglect to keep an account? Suppose a balance struck, these items all entering in; it has been held by this court, (*Ashley* v. *Hill*, 6 Conn., 246,) that the statute of limitations will begin to run from the striking of that balance, and that *insimul computassent* will lie on such a balance. Now a court of equity will treat that as done which ought to have been done, and therefore will regard the balance as struck. A party can not set up his own want of proper accounts, but will be treated as if he had kept proper accounts and charged in the same way. *In re Whitehead*, 2 Law Times Reports, *N. S.*, 776.

HINMAN, C. J. The question in this case is, whether the statute of limitations applies to so much of the appellant's claim against the estate of Mr. Bull as was of more than six years standing at the time of his death. Counsel for the appellant insist that it does not apply, and they cite in support of their claim that class of English and American cases in which it is held that the statute does not run in favor of trustees, stewards, and certain confidential agents, so long as the confidential relation exists. They also cite cases against persons having money in their hands under such circumstances that they are not bound to pay it over to the owners of it until after it has been demanded, in which case, as the money can not be said to be legally due until after such demand, the statute of course does not begin to run until that time.

We have not deemed it necessary to examine these cases particularly, as we are of opinion that they do not apply to the facts of this case. We prefer this course because we are not at this time prepared to say that the rule as against stewards and certain confidential agents, as administered by the courts of equity in England, applies here to the full extent claimed by the appellant; and as we think none of the cases go so far as counsel ask us to go in this case, it appears to us the most

proper course to leave the law upon this subject to be considered when the question arises under such circumstances as render it necessary to determine it.

If the question in this case had arisen previous to the statute of 1855 (p. 69 of the acts of that year,) giving to courts of equity " concurrent jurisdiction with courts of law of all matters remediable by action of account, to be proceeded with in such courts of equity to final decree, according to the common course of proceedings in courts of equity," it is very clear that the statute of limitations would have been a direct and positive bar to the prosecution of the claim. It is only by virtue of that statute that the appellant claims that a bill in equity is a concurrent remedy with an action of account and might now be brought for her demand, and although an action of account as well as book debt and assumpsit is barred by the statute, yet the appellant insists that a bill in equity is not, and as she is now at liberty to prosecute her demand on the equity side of the court, she has a right to the decree of the court in her favor, although the claim is barred at law. The action of account, book debt, or assumpsit, or whichever of them would have lain for this demand, were and now are perfectly adequate remedies for the claim, and except so far as the act of 1855 has altered the law in respect to matters remediable by the action of account, where there is adequate remedy at law courts of equity have no jurisdiction. We have the case, then, in which previous to 1855 an action at law was the only remedy for the enforcement of the claim, and in which such an action may still be maintained, since by that act a bill in equity is only made a concurrent remedy with an action of account. Now, as we have seen, if an action at law had been brought, or the demand had rested as a mere demand at law to be prosecuted before commissioners on an insolvent estate, it is not and can not be denied that the statute of limitations would apply to the claim, since the statute is made directly applicable to the actions of account, book debt and assumpsit founded on such a claim as this, which are the only actions that could have been brought for it. Rev. Stat., tit. 31, § 3. But if such a claim was absolutely barred

by the statute of limitations as it existed previous to 1855, and is still barred by the express language of the statute if an attempt should be made to enforce it by an action at law, can it be regarded as the intention of the act of 1855 to repeal the limitation in case a party under the authority of that act chose to prosecute his claim on the equity side of the court, while it confessedly would be barred if prosecuted at law? In *Robbins* v. *Harvey*, 5 Conn., 335, it was held that where assumpsit was brought for a claim which was the ordinary subject of book debt, the statute of limitations in regard to book debts applied to the case, on the ground that the statute was intended to apply not merely to the form of the action but to the nature of the indebtedness; and it would seem but a fair application of that principle to hold that the statute creating a bar to an action of account, is equally applicable to the account which is attempted to be enforced by a bill in equity, which is now made by statute a concurrent remedy with an action of account. Especially would this seem to be so in Connecticut, where we have been in the habit of treating the statutes of limitation with rather more favor than has been the case elsewhere. Our statute in terms merely applies to an action brought for the recovery of a claim or debt of more than six years standing, but this word "action" has never been construed in any narrow and technical sense as applying only to a demand made by a plaintiff, but has been extended to a plea of set-off, on the ground that the spirit of the act embraces an outlawed claim which a party attempts to avail himself of by a set-off, as much as the same claim when the party attempts to enforce it by a direct suit; and it is only on the ground of its being within the object and spirit rather than within the letter of the statute that claims presented to commissioners on insolvent estates are held to be subject to the statute of limitations. 1 Swift's Dig., 307.

We have never adopted the expedient which has prevailed to some extent in other states, of taking cases out of the statute upon some doubtful or equivocal acknowledgment, but have always held that the party must have intended to relinquish its protection or that its provisions must be applied; and our courts

have called it a beneficial statute, and have looked upon the lapse of time prescribed as a bar to the bringing of an action as furnishing a presumption of payment rather than as an arbitrary statutory bar to a valid claim. Judge Hosmer quotes with approbation the language of Chief Justice Parsons, in which he lays down the principle that the presumption from the lapse of time is that the defendant has lost the evidence which would have availed him in his defence if seasonably called on for payment; and Judge Daggett expresses his satisfaction in rejecting the grounds on which an attempt was made to evade it. *Lord* v. *Shaler*, 3 Conn., 131; *Marshall* v. *Dalliber*, 5 id., 480; *Weed* v. *Bishop*, 7 id., 128; *Peck* v. *Botsford*, id., 172.

But coming to the appellant's claim in this case, is it one to which the statute properly applies? Now we do not understand that the counsel for the appellant deny that the items of the account are all the proper subjects of charge on book, and might be recovered in an action of book debt. Indeed we do not see how, consistently with their own claim upon the record, this could be denied. But it is said that the claim is pursued only as an equitable one, in the nature of a bill in equity for an account against a confidential agent; and that to such a claim the statute does not apply. The deceased is said to have been a trustee for the appellant, and his case is likened to that of the steward of an estate. But, in regard to the money unaccounted for, wherein was he a trustee or steward any more than any collecting agent who has the money of his principal in his hands may be said to be such? And it surely would not be claimed that the statute of limitations does not apply in favor of an ordinary agent who has his principal's money and whose only duty in regard to it is to pay it over. The auditor's report shows that all the money received by Mr. Bull, which he has not accounted for and paid over to the appellant, consists of sums that were remitted to him by Miss Hart's agents in Ohio. And the only duty that devolved on him in regard to this money was to get the drafts cashed and pay over the avails to his principal. Can there be any

doubt, supposing this to be all there is in the case, that on the receipt of any sum from one of the appellant's Ohio agents by the agent here, that sum immediately became a debt against the agent here, for which book debt or assumpsit might have been brought? Is not the duty of a collecting agent to seek his principal and pay over the money collected as obvious and clear as any duty he has to perform? An action will lie against a sheriff who collects money on execution without any previous demand. And in respect to the moneys collected of the Ohio agents it would seem that Mr· Bull could stand upon no higher ground. *Dale* v. *Birch*, 3 Camp., 347 ; *Jefferies* v. *Sheppard*, 3 Barn. & Ald., 696. But if an action could have been brought for this money without a previous demand, then, as the rule must be reciprocal, the statute commenced running at the time the money was received. *Lillie* v. *Hoyt*, 5 Hill, 395. It was suggested that there were taxes and other expenses to be paid out of these funds. This however does not appear, and the fact that the money was remitted to Mr. Bull by other agents of Miss Hart residing in Ohio, where the lands were situated, raises a strong presumption that only the net avails, after all charges of this sort had been deducted, were sent to him, so that his only duty must have been to pay over the sums as they were received. We do not see therefore how Mr. Bull's condition was any thing other than that of an ordinary collecting agent ; and if we are correct in this, there can be no doubt that the statute of limitations applies to the case.

But we do not see how it was possible for the appellant to recover in this case before the auditor that portion of her claim which is of more than six years standing, on another ground, whatever might have been the case before the commissioners. No doubt on a trial before commissioners on an insolvent estate it is open to a party to make out either an equitable or legal claim, and on his doing either he is entitled to an allowance of it, since in that tribunal there are no pleadings to embarrass a claimant, and the commissioners must have equitable as well as legal powers or they could not

do justice in all cases. But when a case comes by appeal from the commissioners to the superior court, although there are of course the same equitable and legal powers in the court, yet by the rules of practice which prevail in that court the claimant, where he is the appellant, must give the opposite party specific notice of his claim by filing what are called the reasons for his appeal. In this case the appellant might have stated her claim in such a manner as to entitle her to a recovery whether it was an equitable or strictly legal one. But she obviously should be confined in her proof to the reasons she chose to give, since otherwise the rule requiring her to give reasons, instead of being of any benefit whatever to the appellees, would operate as a snare to mislead and entrap them. But the reasons in this case expressly state that the account presented to the commissioners, the disallowance of which is complained of, was due to the appellant by book, and she makes profert of her book in the precise form that has, time out of mind, been used in ordinary declarations in an action of book debt, and does not state her claim in any other form or as arising in any other way. How then could the auditor treat the claim in any other way than as a claim at law like any other book debt? And as the statute of limitations is made directly applicable to the action of book debt, and is held to apply to a debt by book in whatever form presented, it appears to us that there is no way of avoiding the application of the statute without wholly departing from the claim which the appellant has made upon the record. There was an attempt to avoid this result by claiming that the language of the second reason for the appeal was general enough to justify proof of any just claim whether legal or equitable, but this we think is not so. Indeed there is really but one reason given for the appeal. What is called the second reason sets up no new or different claim from the first. It expressly refers to the claim made in the first reason, and is a mere allegation that the commissioners rejected it when they should have allowed it.

We are of opinion therefore that so much of the appellant's

claim as was of more than six years' standing at the time of the death of Mr. Bull can not be recovered against his estate, and so we advise the superior court.

In this opinion the other judges concurred.

————— ◆ ◆ ◆ —————

# SUPREME COURT OF ERRORS.

## LITCHFIELD COUNTY, APRIL TERM, 1865.

Present,

Hinman, C. J., Dutton, Butler and McCurdy, Js.