COUNTY OF REDWOOD vs. WINONA & ST. PETER LAND COMPANY.

January 31, 1889.

Taxation—Assessment—Omitted Taxes—Interest—Penalties.—Section 113, c. 11, Gen. St. 1878, as amended by Laws 1881, c. 5, § 1, providing for assessing taxes upon property for past years in which such taxes had not been assessed, does not authorize the including in such assessment of penalties for such years. Following *County of Brown* v. *Winona & St. Peter Land Co.*, 39 Minn. 380.

ON REARGUMENT, MAY 24, 1889.

Constitution—Taxation—Omitted Taxes—Subsequent Assessment by Auditor.—"If any real or personal property shall be omitted in the assessment of any year or years, and the property shall thereby escape taxation, when such omission shall be discovered the county auditor shall enter such property on the assessment and tax-books for the year or years omitted, and he shall assess the same, and extend all arrearages of taxes properly accruing against such property, with 7 per cent. interest thereon from the time said taxes would have become delinquent." Laws 1881, c. 5. *Held* that, so far as this act provides for the assessment of the amount of the "original" tax, it is valid. Although a land-owner has no notice or opportunity of being heard in the manner of making the assessment and extending the tax by the county auditor, the act is not repugnant to the constitutional provision that property shall not be taken without "due process of law," for the reason that in the proceedings under the general tax law to obtain judgment against the land, he has notice, and an opportunity of interposing his defences to both the assessment and the tax.

**Same—"Back" Interest on Omitted Taxes.**—But *held*, that the provision of the act adding "back" interest to the tax is invalid, as being unequal taxation, for the reason that until the amount of the tax is ascertained the owner has no opportunity of paying it, and is not in default, and a person is chargeable with interest only upon contract to pay it, or for some default of legal duty on his part.

**Same—Penalties—Illegality of Part of Tax.**—*Held, also,* that "penalties" for non-payment of taxes can only be imposed after the tax-payer has had an opportunity to pay, and fails to do so. Hence, where part of a tax is illegal, and the party has had no opportunity of paying the legal part alone, and he interposes and maintains a defence to the illegal part, the 10 and 5 per cent. penalties previously imposed under section 69 of the general tax law were wholly unauthorized and invalid, (the party not having been then in default,) and no part of them should be included in the judgment.

**Same—Action to Enforce Taxes against Land — Limitation.** — *Held, also,* that proceedings under the tax law to obtain judgment against the land are "an action upon a liability created by statute," and therefore, under the provisions of Gen. St. 1878, *c.* 66, § 12, the six-years limitation prescribed by section 6 of the same chapter applies. Overruling *County of Brown* v. *Winona & St. Peter Land Co.*, 38 Minn. 397.

In the year 1886, certain lands in Redwood county, then owned by the defendant, and which had not theretofore been assessed for taxation, were assessed by the county auditor for taxes for prior years—some for each year following 1869, others for each year following 1870, and others for each year following 1871, each parcel of land being assessed for each year subsequent to its conveyance by the state to the Winona & St. Peter Railroad Co., and subsequent to the execution (October 31, 1867,) of the contract between that company and D. N. Barney and others, (Exhibit W,) mentioned in the second of the following opinions. The assessment was made by the auditor in the mode directed by Gen. St. 1878, *c.* 11, § 113, as amended by Laws 1881, *c.* 5, and 1885, *c.* 2, § 23, interest at 7 per cent. per annum being added to the tax for each year from the time it would have become delinquent if assessed in such year. The taxes so assessed, remaining unpaid on the first Monday of January, 1888, were included in the delinquent list filed in the district court, and the Winona & St. Peter Land Co. answered, alleging its objections, which

were overruled by *Webber*, J., and judgment was ordered and entered for the amount of such taxes and interest, and also for a penalty of 10 per cent. on such amount, as accruing June 1, 1887, and a further penalty of 5 per cent. as accruing in January, 1888, because of non-payment. (Gen. St. 1878, c. 11, § 69, as amended by Laws 1885, c. 2, § 15.) At the defendant's request, the case was certified to this court. The reason the lands were not assessed before 1886 was found by the court to be "that neither the township assessors nor the county officers in said Redwood county had any knowledge of the existence of the contract or agreement between the Winona & St. Peter Railroad Company and Barney *et al.*, (Exhibit W,) until about the first day of September, 1886, and they presumed said lands were exempt from taxation."

All of the lands formed part of the land grant of the Winona & St. Peter R. Co., and were all included in the contract with Barney and others, the effect of which contract was (as held in the cases referred to in the opinion) to render them taxable immediately upon their conveyance by the state to the railroad company, although, by the terms of the grant, the lands granted were "exempted from all taxation until the same shall have been sold and conveyed by said company;" this court having held that the Barney contract was in effect a conveyance. *State* v. *Winona & St. Peter R. Co.*, 21 Minn. 472, (where the contract is fully stated;) *County of Brown* v. *Winona & St. Peter Land Co.*, 38 Minn. 397, (37 N. W. Rep. 949.)

After the filing of the first of the following opinions, and pursuant to stipulation of the parties, an order was made vacating the decision, and for a rehearing, which was had at the April term, 1889.

*Moses E. Clapp*, Attorney General, and *M. M. Madigan*, for plaintiff.

*John M. Gilman, Towney & Randall*, and *John F. Dillon*, for defendant.

GILFILLAN, C. J. This case is, except as to the description of the lands involved, precisely similar to the case of *County of Brown* v. *Winona & St. Peter Land Co.*, 39 Minn. 380, (40 N. W. Rep. 166,) (decided at the present term.) The decision in this case, of course, follows the decision in that. The court below will therefore ascer-

tain how much penalties were included in the assessment, and modify its judgment by excluding the amounts of them from the amounts for which judgment was rendered.

## ON REARGUMENT.

MITCHELL, J.   These proceedings, which were certified to this court pursuant to Gen. St. 1878, *c.* 11, § 80, having been inadvertently submitted at the late October term without argument, and some of the points intended to be raised not having been considered or decided, the decision filed therein (41 N. W. Rep. 465,) was vacated, and the case set for reargument at the present term.   The lands in question are included in that part of the land grant of the Winona & St. Peter Railroad Company to which the "Barney party" and their successor in interest, the Winona & St. Peter Land Company, was entitled under the agreement of October 31, 1867, (Ex. W,) already several times before this court.   These lands were conveyed from time to time (beginning with the year 1869) by the state to the railroad company, in which the legal title remained until March, 1887, although the equitable title passed immediately, under the agreement referred to, to the Barneys or their successor.   None of the lands were assessed or any steps taken to enforce any taxes against them until 1886, when, in pursuance of the provisions of Gen. St. 1878, *c.* 11, § 113, as amended by Laws 1881, *c.* 5, and Laws 1885, *c.* 2, § 23, the county auditor entered them upon the assessment and tax books, assessed them, and extended taxes against them, on the tax-list for the current year, for each year subsequent to the dates when the lands were conveyed by the state to the railway company, and included in the amount of such taxes interest thereon from the time they would have become delinquent had they been assessed in the proper years.   The taxes remaining unpaid and having become delinquent, these proceedings were instituted in January, 1888, to enforce collection by obtaining judgment against the lands.   That these lands became taxable immediately upon their conveyance by the state to the railroad company is no longer an open question in this court.   *State* v. *Winona & St. Peter R. Co.*, 21 Minn. 472; *County of Brown* v. *Winona & St. Peter Land Co.*, 38 Minn. 397, (37 N. W. Rep. 949;) *County of Brown* v. *Wi-*

*nona & St. Peter Land Co.*, 39 Minn. 380, (40 N. W. Rep. 166.) The constitutionality of the statute under which these taxes for past years were assessed is now attacked upon grounds not raised or not specially urged in former cases. These are, in brief, three : *First*, that it violates section 1, art. 9, of the constitution of the state, which requires equality and uniformity of taxation; *second*, that it violates section 7, art. 1, of the same instrument, which provides that no' person shall be deprived of his property without due process of law; *third*, that, even if this mode of assessment can be sustained, the provision requiring 7 per cent. interest to be added from the time the tax would have become delinquent if assessed in the proper year is invalid, as being unequal taxation.

1. The burden of appellant's argument in support of the first proposition seems to be that the legislature has no power to authorize a tax for past years upon property theretofore omitted, when all the purposes of taxation for such years have been fully subserved; that taxes can only be levied to defray the expenses of the state and local government; and that if these back taxes are levied and collected, there is now no object to which they could be applied; that they would be a mere idle surplus in the treasury ; that the fact that in past years lands have been omitted cannot be made the basis of *present* taxation. The grand fallacy in this argument is in assuming that statutes like the one under consideration are acts authorizing *original* taxation. The tax was a debt or liability which the land owed in the year when it ought to have been assessed. Such statutes are purely remedial in their nature, and only go to confirm preexisting rights by adding to the means of enforcing existing obligations. And it can hardly be necessary at this day to argue that wherever property has escaped payment of its share of the public burdens it is competent for the legislature to provide for its assessment or reassessment for back years, and for that purpose it may adopt any method which it might have originally adopted for the enforcement of the collection of taxes. There is no difference in principle between a case where property has escaped taxation by reason of its entire omission from the assessment-rolls and a case where it has escaped by reason of defects in attempted proceedings for the en-

forcement of the tax.   In either case the debt or liability for its share of the public burdens remains, and it may be ascertained and enforced in any subsequent year; and the owner cannot object to any particular method adopted for that purpose, provided it operates equally and justly.   The principle of all the cases is that the taxing power, when acting within its legitimate sphere, is one which knows no stopping-place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by any obstacles, it may return again and again until, the way being clear, the tax is collected.   This right to assess or reassess for back taxes, under appropriate legislation, has been fully recognized by this court in *County of Olmsted* v. *Barber*, 31 Minn. 256, (17 N. W. Rep. 473,) and *County of Ramsey* v. *Chicago, Mil. & St. Paul Ry. Co.*, 33 Minn. 537, (24 N. W. Rep. 313.)   It is laid down as the unquestioned law by every text-writer.   Cooley, Tax'n, 309; Blackw. Tax-Titles, §§ 325, 951; Burroughs, Tax'n, § 93; Welty, Assessm. § 197; 2 Dill. Mun. Corp. 814.   It is supported by an unbroken line of decisions, not only in cases where an abortive attempt to enforce the tax had been previously made, but also in cases where it had been assessed against the wrong person, or where, as in this case, property had entirely escaped assessment.   *Fairfield* v. *People*, 94 Ill. 244; *People* v. *Board of Assessors*, 92 N. Y. 430; *City of Wheeling* v. *Hawley*, 18 W. Va. 472; *Harwood v. North Brookfield*, 130 Mass. 561; *Hubbard* v. *Garfield*, 102 Mass. 72; *Byram* v. *Detroit*, 50 Mich. 56, (12 N. W. Rep. 912, and 14 N. W. Rep. 698;) *Overing* v. *Foote*, 43 N. Y. 290; *North Carolina R. Co.* v. *Commissioners*, 82 N. C. 259; *Mills* v. *Charleton*, 29 Wis. 400.   The fact that the public expenses have been paid for the years in which the taxes were omitted, or that the particular public purposes for which they were originally required have been met with other funds, or that the collection of the omitted taxes may temporarily create a surplus of public revenue, presents no constitutional ground why omitted property should continue to escape its due share of taxation.   When collected, these taxes will still belong to the public, and, like any other surplus, be subject to future appropriation, and thereby lessen future

taxation upon those who have already paid more than their share. *Village of Hyde Park* v. *Ingalls*, 87 Ill. 11; *Fairfield* v. *People, supra.*

2. Appellant's second point, to wit, that this statute violates section 7, art. 1, of the constitution, is predicated upon the assumption that it provides for the assessment of these back taxes without notice to the property-owner, and without giving him any opportunity of being heard in the matter. Without following counsel through their exhaustive arguments upon this point, it is sufficient to say that it seems to proceed upon what we consider two false assumptions, to wit: *First*, that in proceedings in the exercise of the taxing power the property-owner is entitled to notice and to be heard in each preliminary step in the proceedings, *pari passu* with their progress; and, *second*, that under the tax law (Gen. St. 1878, c. 11, §§ 75, 79) the defences which he may interpose by answer, when the state applies for judgment, are so restricted as not to include all the objections which go to the merits of the proceedings. Where, as in the present case, the tax is levied on property, not specifically, but according to its value, to be ascertained by some person appointed for that purpose, undoubtedly a party is entitled to notice and an opportunity to be heard; but we know of no case where it was ever held that a party was entitled to notice of, and to be heard in, each step in tax proceedings as it is taken. We doubt whether any tax law ever provided for any such thing. The principle running through all the cases is that a law does not infringe upon the constitutional provision under consideration if the property-owner has an opportunity to question the validity or amount of the tax *either before that amount is determined, or in subsequent proceedings for its enforcement.* Whenever by law a tax is imposed upon property, and those laws provide for a mode of confirming or contesting it in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701, (4 Sup. Ct. Rep. 663.)

This right is fully given under the sections of the tax law already referred to. Within 20 days after the last publication of the de-

linquent list any person may by answer interpose any defence or objection he may have to the tax. He may set up as a defence that the tax is void for want of authority to levy it, or that it was partially, unfairly, or unequally assessed. *Comm'rs of St. Louis Co.* v. *Nettleton*, 22 Minn. 356. He may set up as a defence *pro tanto* that a part of a tax has not been remitted, as required by some statutes. *Comm'rs of Houston Co.* v. *Jessup*, Id. 552. That the land is exempt, or that the tax has been paid. *County of Chisago* v. *St. Paul & Duluth R. Co.*, 27 Minn. 109, (6 N. W. Rep. 454.) That there was no authority to levy the tax, or that the special facts authorizing the insertion of taxes for past years in the list did not exist, or any omissions in the proceedings prior to filing the list, resulting to his prejudice. *County of Olmsted* v. *Barber*, 31 Minn. 256, (17 N. W. Rep. 473.) The filing of the list is the institution of an action against each tract of land described in it, for the recovery of the taxes appearing in the list against such tract, and tenders an issue on every fact necessary to the validity of such taxes. *Chauncey* v. *Wass*, 35 Minn. 1, (25 N. W. Rep. 457, and 30 N. W. Rep. 826.) The only limitation or restriction upon the defences or objections which may be interposed is that contained in section 79, to the effect that, if a party interposes as a defence an omission of any of the things provided by law in relation to the assessment or levy of a tax, or of anything required by any officer to be done prior to filing the list with the clerk, the burden is on him to show that such omission has resulted in prejudice to him, and that the taxes have been partially, unfairly, or unequally assessed. This relates not to want of authority to levy the tax, but to some omission to do or irregularity in doing the things required to be done in assessing or levying a tax otherwise valid. *Comm'rs of St. Louis Co.* v. *Nettleton, supra.* And certainly, in justice or reason, a party cannot complain that, when he objects to a tax on the ground of some omission or irregularity in matters of form, he is required to show that he was prejudiced.

The appellant lays much stress upon the fact that in the case of the assessment of "back taxes" the statute gives none of the opportunities for the correction of unjust or unequal valuations by local boards of equalization, which it furnishes in the case of original tax-

ation for a current year. This, of itself, is no proof that the law is invalid. The legislature is not bound to adopt the same method of procedure in both cases. The only limitation upon its discretion in the matter is that it must adopt the constitutional method,—one which it might have authorized for original taxation had it seen fit to do so.

The point is made that the act of 1881 provides no adequate means of making an assessment or valuation of property for the omitted years, and therefore it fails to satisfy the constitutional requirements that property shall be taxed according to its value, (article 9, § 3,) and that all taxes shall be as nearly equal as may be, and the valuation of all property on which taxes are levied equalized and uniform throughout the state, (article 9, § 1;) and considerable stress is laid upon the supposed difficulty in getting at the actual value of property at a date more or less remote in the past. It is true that the act in question merely appoints the county auditor the assessor, and makes it his duty to assess the property, without specifically providing on what basis he shall fix its valuation, or what means he shall adopt to ascertain it. But it is not to be assumed, for the purpose of invalidating the statute, that it contemplated or authorized the assessment upon an unconstitutional basis, as, for example, the value of the property to-day. On the contrary, it must be understood as providing for an assessment upon the only basis that could be lawfully adopted, to wit, the value of the property at the time the land should have been assessed. And while the law does not specifically provide what means the auditor shall take to ascertain that fact, yet, as it is made his duty to ascertain it, it is also impliedly his duty to adopt such means of doing so as are reasonably within his reach, and from these to exercise his best judgment. The difficulty in the way of arriving at an exactly accurate result on account of the lapse of time is no fatal objection to the statute. Uniformity as near as may be is all that the constitution requires. Moreover, if the auditor, either from mistake or negligence, makes an unfair or unequal assessment, the owner has an opportunity of being heard and having this corrected in the proceedings instituted to obtain judgment against the land, and this fact is also an answer to the suggestion, so frequently made by appellant, that the assessment is made arbitrarily

by the auditor, without notice or opportunity to be heard on the part of the owner.  But it is said that this opportunity is only given him after the taxes are said to be delinquent, and the penalties of 10 per cent. and 5 per cent. are added to them, on the 1st of June and the first Monday of January following.  Assuming, without deciding, that the provisions of the general tax law as to the addition of these penalties are applicable to "back taxes" assessed under this statute, the argument proceeds upon a false premise; for, inasmuch as the whole tax extended against a tract of land is an entirety, and the owner cannot pay a part without paying the whole, if any part of the tax is illegal he is not in default, and, if he maintains a defence to a part of it, the penalties on the whole fall to the ground, precisely as if the whole tax were illegal.

In their reply brief counsel advance a new point against the validity of the act.  Briefly stated, it is this:  Conceding that the opportunity to answer and be heard in the proceedings to obtain judgment against real property satisfies the constitutional requirement as to "due process of law," yet the act in question provides for the assessment and taxation of both real and personal property, and, as it makes no provision for the collection of such taxes, they can be collected, if at all, only under the provisions of the general tax law; that under that law (section 58, as amended in 1885) personal taxes become delinquent on March 1st, and are enforceable, after April 1st, by distress of property; that, as this is prior to any notice or opportunity to the tax-payer to be heard, therefore the act is void as to personal taxes, and, if so, the whole act is void, *first,* because its purposes are so connected that it cannot be presumed that the legislature would have passed it for the purpose of collecting taxes for "omitted" years on real property alone; and, *second,* to hold it valid as to taxes on realty, and not on personalty, would render it repugnant to the constitutional provisions requiring equality of taxation. Without admitting the correctness of the other postulates in this line of reasoning, we think the assumption is erroneous that these personal taxes could only be collected by proceedings under the general tax law.  It will be observed that the objection suggested is not to the act of 1881, providing for the assessment of the taxes, but to the

supposed inapplicability of the provisions of section 58, for the purpose of enforcing them, because, if applied, they would be, under the circumstances, unconstitutional. But, assuming that section 58 is for that reason inapplicable, and also assuming that the taxes could not be enforced under the provisions of section 60 by serving a citation on the party to show cause why judgment should not be rendered against him,—in short, assuming that no provision of the law would be applicable,—still there is a valid tax constituting a statutory liability against the property-owner to the state, which, in the absence of any law providing any other method, might be enforced by an ordinary personal action.

3. Had the legislature the right, in the case of the assessment of taxes for past years, to include in and add to these taxes interest from the date when they would have become delinquent if they had been levied in the proper year? We think not. To render a person chargeable with interest there must be a promise, express or implied, to pay it, or some default of duty on his part in not sooner paying the money. *Sibley* v. *County of Pine*, 31 Minn. 201, (17 N. W. Rep. 337.) In a case like the present there is neither. If the law required a land-owner to list his property for taxation, his failure to do so, whereby it escaped payment of the tax at the proper time, would constitute such a default of duty as would justify charging him with interest for the time during which the public was deprived of the use of the money. Or if the amount of the tax had been ascertained, so that he had an opportunity to pay it, but instead of doing so saw fit to defeat its present collection by interposing an objection on the ground of some defect or irregularity in the proceedings, and a reassessment thereby became necessary, we can see how it might be urged that he could be charged with interest during the time that the collection of the tax was postponed, for the tax-payer himself would be in a sense responsible for the delay. But where the land has been entirely omitted from the assessment-rolls the owner is not in default. He is not required to list his land. The neglect or omission is wholly that of the public officers. He has never had an opportunity to pay the tax, for the amount of it has never been ascertained. If, under such circumstances, in the absence of any default on his

part, the legislature can impose interest retrospectively, there is no reason why it might not also impose certain penalties for the non-payment of the tax, for both stand, in this respect, on the same footing. Both are in the nature of damages for a default of legal duty. The only difference is that one is in its nature compensatory, while the other is punitive. The effect of adding this back interest to the amount of the tax, in the absence of any default on the part of the owner, is to make his taxes that much larger than those of his neighbor on property of the same value. This, in our judgment, would be in violation of the principle of equality of taxation enjoined by the constitution. This provision of the statute we therefore hold invalid. See *State* v. *Mayor of Jersey City,* 37 N. J. Law, 39.

4. The certificate of the trial judge does not show that any "penalties" were included in the judgment, but counsel have made and filed a stipulation to the effect that in the judgment against these lands there was included not only the taxes against them for each year, as claimed, and interest, as provided in the act of 1881, but also a penalty of 10 per cent. upon said taxes and interest, as accruing thereon June 1, 1887, as being delinquent, and also a further penalty of 5 per cent., as accruing January, 1888; and that these facts may be taken into consideration and passed upon by the court the same as if they appeared in the certificate of the district judge. It will be observed that these penalties, unlike those attempted to be included in the case of *County of Brown* v. *Winona & St. Peter Land Co.,* 39 Minn. 380, are penalties which are assumed to have accrued (under the provisions of section 69 of the general tax law, as amended in 1885) after the taxes had been actually assessed in 1886, and became "delinquent" June 1, 1887. It is claimed that the act of 1881 gives no warrant for the exaction of "penalties," and that the provisions of the general tax law referred to have no application to "omitted taxes." It is also urged that the utmost power that the state can constitutionally exert is to impose penalties for non-payment of taxes validly assessed, from the time, and only from the time, when the same, after due notice to pay them, have become delinquent; that the first notice which the tax-payer has that "omitted" taxes have been assessed against his land is when the delinquent list is published

in January of the following year, after the 10 and 5 per cent. penalties have both already accrued and been added to his tax. In short, that a penalty for a default is imposed before any default has in legal contemplation been made.

While conceding the force of these positions, we are not called upon to pass upon either of them in the present case. One thing is very certain: that a penalty in any form cannot be imposed until a party is in default in some legal duty. A penalty for the non-payment of a tax cannot be imposed until the person has an opportunity to pay it, and fails to do so. What we have heretofore said regarding "interest" is equally applicable to penalties. Now, as the whole tax extended against a tract of land is an entirety, the owner cannot pay a part of it without paying the whole; and if a part of it is illegal, and he pays the whole, ordinarily it would be a voluntary payment, and he could not recover back the illegal part. Hence in such case his only remedy is to wait until proceedings are commenced to enforce judgment against his land, and then defend against the illegal part of the tax; and until it is deducted by the judgment of the court he has had no opportunity to pay the valid part of the tax, and consequently has been guilty of no default. Therefore, whether it be a case of a "current" tax, or an "omitted" tax, if the party succeeds in his defence as to part of it as illegal, all the penalties on the *whole* tax previously imposed for its non-payment were unauthorized, and cannot be included in the judgment. This is precisely the present case. That part of the tax assessed and extended against the lands in 1886 as "back interest" was, as we have already decided, unauthorized and illegal. To that extent appellant had a valid defence to the tax, which it had a right to interpose, and in which it was entitled to succeed. Until the correct amount of the taxes had been determined by excluding this illegal addition, it had not been in default, and no penalties could be legally imposed.

5. The remaining question is whether the statute of limitations applies to proceedings, like the present, to enforce payment of delinquent taxes. It is elementary that time never runs against the state unless there is an express provision or necessary implication to that effect; but our statute provides "that the limitations prescribed for the com-

mencement of actions shall apply to the same actions when brought in the name of the state, or in the name of any officer, or otherwise, for the benefit of the state, in the same manner as to actions brought by citizens." Gen. St. 1878, c. 66, § 12.   The preceding sections of the same chapter divide actions into classes, according to their character, and prescribe the limitation for each, among which are "actions upon a liability created by statute," the limitation for which is fixed at six years.   In *County of Brown* v. *Winona & St. Peter Land Co.*, 38 Minn. 397, we held that the statute did not apply to proceedings like the present, because they are not analogous to any of the classes of actions enumerated.   The question was very briefly argued, the attention of both court and counsel being mainly directed to the principal contention in the case, which was whether these lands were subject to taxation prior to the final determination of the litigation as to their ownership between the railroad company and the land company. Hence, the question of the statute of limitations was disposed of very briefly, and perhaps without the consideration on part of either counsel or court which its importance deserved.   It is undoubtedly a matter of more public interest than was then realized.   It is a fact of common knowledge that in early years a large part of the lands in the state was not subject to taxation, because they belonged to the United States, or to the state or territory, or to railroad companies whose lands were exempt.   These lands were from time to time passing by entry or conveyance to other parties, in whose hands they became immediately taxable.   But the public records in the several counties did not usually show the fact.   Hence, for this and other reasons, the taxability of the lands was overlooked or not discovered by the public officers, and the property escaped taxation, perhaps for years.   It was not infrequent that other lands were by oversight or mistake omitted or dropped from the assessment-rolls,—a thing that might naturally be expected in the formative period of the governmental machinery of a new community.   Many of these lands have since repeatedly changed ownership, and passed into the hands of innocent purchasers, who relied upon an examination of the public records or an abstract of title.   Hence, if after a lapse of a quarter or a third of a century the state can still proceed to assess taxes against

the property for the years when it thus escaped taxation, it will be readily seen that the consequences would be very serious in the way of incumbering or unsettling titles. Indeed, under such a rule, a man could hardly ever be absolutely certain that his title was clear. While this is no ground for a court indulging in judicial legislation, it certainly makes it eminently proper that the question be carefully reconsidered on its merits.

That a tax is "a liability created by statute" we think admits of no doubt, either upon principle or authority. *City of San Francisco* v. *Jones*, 20 Fed. Rep. 188; *City of San Francisco* v. *Luning*, 73 Cal. 610, (15 Pac. Rep. 311;) *State* v. *Yellow Jacket Silver Mining Co.*, 14 Nev. 220, 226. Therefore, if instead of these proceedings against the land the statute had, as in many jurisdictions, authorized a personal action against the owner, unquestionably it would have been an action upon "a liability created by statute," and the six-years' limitation would apply. The only question, then, is whether it makes any difference because the proceedings are against the land instead of against the owner. Does this fact so destroy their analogy to an *action* as to make the statute inapplicable? Statutes of limitation are statutes of repose, which tend to the peace of society, and it is a cardinal rule that they are to be construed liberally, so as to effectuate the intention of the legislature. It is also well settled that such statutes, though in terms applicable only to "actions," are to be applied as a rule for all proceedings that are analogous in their nature to actions, so as to make the right sought to be enforced, and not a form of procedure, the test as to whether or not the statute applies. Upon this principle they are held to apply to all claims which may be the subject of actions, however presented; also that they furnish a rule for cases analogous in their subject-matter, but for which a remedy unknown to the common law has been provided. They have also been applied by analogy to proceedings in admiralty, to claims in bankruptcy or in probate court, although not within the strict letter of the statute. *Hart's Appeal*, 32 Conn. 520, 540; *Forster* v. *Cumberland Valley R. Co.*, 23 Pa. St. 371. The legislature having adopted the policy of making the statutes of limitation applicable to the state, we ought to give them as liberal construction against the state as against citizens. A tax

being a liability created by statute, and the filing of the delinquent list being, as the statute declares, and as we have held, the institution of an action against the land for the recovery of the tax appearing against it in the list; and, inasmuch as the nature of the right sought to be enforced, and not the mode of procedure, is the test,—we are unable to see why it should make any difference whether the action is *in rem* or *in personam,*—against the property, instead of against its owner. We have therefore come to the conclusion that these proceedings are, within the meaning of the statute, "an action upon a liability created by statute," and are barred as to all taxes for the enforcement of which such proceedings might have been instituted more than six years before the commencement of the present proceedings, had such taxes been assessed in the proper year.

The record, as certified to us, does not furnish the *data* from which to determine what particular taxes were barred at the time of the commencement of these proceedings. The matter is therefore remanded to the district court, to amend or modify its judgment so as to exclude or deduct therefrom all interest which was included in the amount of taxes as assessed and extended against these lands in 1886, also all penalties, and also all taxes barred by the statute of limitations, according to the rule laid down in this opinion.

NOTE. A motion by the plaintiff for a reargument was denied June 3, 1889.

On July 16, 1889, the decision in *County of Brown* v. *Winona & St. Peter Land Co.*, (38 Minn. 397, 37 N. W. Rep. 949,) and the decision in *County of Brown* v. *Winona & St. Peter Land Co.*, (39 Minn. 380, 40 N. W. Rep. 166,) in neither of which cases had any *remittitur* been issued, were modified so as to accord with the decision in this case.