KNUDTSON, County Treasurer, Respondent, v. CITIZENS' NATIONAL BANK & TRUST CO. OF SIOUX FALLS, et al, Appellants.

(251 N. W. 810.)

(File No. 7373.   Opinion filed December 19, 1933.)

*Boyce, Warren & Fairbank* and *Bielski & Elliott,* all of Sioux Falls, for Appellants.

*G. Norton Jameson,* State's Attorney, of Sioux Falls, and *James Brown,* Assistant Attorney General, for Respondent.

SKINNER, Circuit Judge. This is an action brought by W. T. Knudtson, as county treasurer of Minnehaha county, S. D., plaintiff, against the Citizens' National Bank & Trust Company of Sioux Falls, a corporation, and the Security National Bank & Trust Company of Sioux Falls, a corporation, as administrators with the will annexed of the estate of J. P. Zochert, deceased; and, from a judgment for the plaintiff in this action, and order denying motion for a new trial, the defendants have appealed.

The undisputed evidence in this case disclosed that the said J. P. Zochert died on the 19th day of December, 1929, at Sioux Falls, S. D. He was at that time, and had been for a number of years, living at Sioux Falls, S. D.

He left a will, which was admitted to probate in the county court of Minnehaha county, S. D., on the 25th day of February, 1930, and on that day the defendants in this action were appointed administrators with the will annexed.

On the 3d day of March, 1930, an order was made by the county court of Minnehaha county, directing that notice to creditors be given. This notice to creditors was duly published as required by law, and the last publication was on the 26th day of March, 1930. On the 14th day of June, 1930, the county judge of Minnehaha county made an order that due and legal notice to creditors of J. P. Zochert had been given. No claim was ever presented to the administrators of the estate of J. P. Zochert for the taxes sued for in this action.

J. P. Zochert had never been taxed in Minnehaha county for personal property or for moneys and credits during his lifetime. The city assessor of Sioux Falls had never made any return during the years 1919 to 1929, inclusive, showing assessment of any personal property, or moneys and credits owned by J. P. Zochert, and had never made any return during any of these years that J. P. Zochert refused to turn in a list of moneys and credits or personal property or had refused to attach his oath to the validity of any such list or had refused to testify to what personal property and moneys and credits he owned.

On September 26, 1930, the division of taxation sent an order to the county auditor of Minnehaha county, directing him to forthwith enter upon the assessment rolls, for the years 1919 to 1929,

inclusive, a large amount of moneys and credits, as will herein-after be set out, and directed the county auditor to proceed in compliance with chapter 110 of the Session Laws of 1919. In compliance with that order, the county treasurer mailed a notice of intention to add omitted property to the tax rolls to the administrators hereinbefore named, and set the 10th day of October, 1930, as the date upon which the assessment would be made. This notice required the administrators to show cause, if any, why such property should not be added to the assessment rolls.

The amount of property to be added as shown by the notice was as follows:

| | |
|---|---|
| 1919 | $132,125.82 |
| 1920 | 171,970.09 |
| 1921 | 179,207.27 |
| 1922 | 188,636.30 |
| 1923 | 206,160.63 |
| 1924 | 103,210.84 |
| 1925 | 103,394.02 |
| 1926 | 139,168.12 |
| 1927 | 129,858.95 |
| 1928 | 143,777.31 |
| 1929 | 153,911.03 |

The county auditor of Minnehaha county, on the 10th day of October, 1930, then took the original tax books in the auditor's office, for the years 1919 to 1929, inclusive, and, on the personal tax list for Sioux Falls, and Dell Rapids, entered the name of J. P. Zochert, and, under the heading of money and credits, the valuations set out in the notice, which was also contained in the order from the Tax Commission, and then entered the tax computed on that valuation for each year at the rate of levy for each year, and then made this notation: "Additional Tax Spread, by order of State Tax Commission, October 10, 1930." There had not been any personal property or any money and credits returned for any of these years by the assessor of Sioux Falls against J. P. Zochert, and this was an entirely new entry made on the old tax books on October 10, 1930.

The county auditor then went into the county treasurer's office, and took the duplicate tax records for the various years, and made

the same entry for each year as he had made upon the tax records in the auditor's office, but placed no new certificate of any kind upon the treasurer's books.

The county auditor never mailed any notice of assessment which he had made to the taxpayer against whom the assessment had been made, or to the administrators of the estate, as required by chapter 110, Session Laws of 1919.

The county treasurer then figured interest on the taxes on each of these assessed valuations for the different years, beginning on the 1st day of May following the year for which the assessment was made at 12 per centum per annum to the 1st day of December, 1930. The taxes so spread against the money and credits of J. P. Zochert from 1919 to 1929, inclusive, amounted to $5,727.56, and the interest at 12 per centum per annum to December 1, 1930, amounted to $2,727.17, and, when the judgment of the trial court was entered, interest was figured at 12 per centum of the total tax to July 1, 1931, and at 10 per centum per annum from July 1, 1931, to the date of the judgment, which was November 19, 1931; making a total judgment for taxes and interest $10,085.20, and the costs amounting to $19.60. The judgment was a personal judgment against the said administrators for said sum and costs.

This action was commenced by the service of summons on December 1, 1930. It was stipulated by the attorneys at the time of the trial that J. P. Zochert owned the amount of money and credits as hereinbefore set out, during the various years from 1919 to 1929, inclusive, and that such money and credits consisted of certificates of deposit in various banks in South Dakota and Minnesota, and also mortgages on real estate in South Dakota.

The trial court found all of the facts as above set forth, and in the conclusions of law held that the failure of the county auditor to follow the provisions of chapter 110, of the Session Laws of 1919, in regard to making a new certificate of the assessment against J. P. Zochert, and the failure of the county auditor to mail a notice of assessment to the taxpayer, J. P. Zochert, or his legal representative, rendered the attempted assessment against the estate of J. P. Zochert, deceased, made October 10, 1930, illegal and void.

The court found that no claim for the amount of these taxes was ever presented to the administrators, before the commencement

of the action, and held as a matter of law that it was not legally necessary that the plaintiff or any one else file a claim for such taxes against the estate of said decedent. The court then held that, under the laws of the state of South Dakota, the attempted assessment being void, it was the duty of the court to reassess the property and render judgment for the amount of the tax due for each year.

Counsel for the appellant in this case make the following claims: (1) That the plaintiff should have filed a claim against the estate of the decedent before bringing an action against the Administrators. (2) That there was no authority to make an assessment where no assessment had ever been made against the decedent in his lifetime. (3) That there was no authority to make the levy and assessment against the administrators of the estate of said decedent. (4) That the statute of limitations would run against all claims of the plaintiff farther back than six years from the date of the commencement of the action. (5) That no interest should be charged until May 1st, after the judgment of the court has been entered, as taxes become delinquent May 1st, after the assessment.

■ There can be no question, under the provisions of section 2 and section 8 of chapter 109 of the Session Laws of 1919, as amended by chapter 108, § 2, Laws of 1923 of this state, as to certificates of deposit in various banks in South Dakota and Minnesota and mortgages upon real estate in South Dakota being money and credits which are subject to taxation.

Section 4 of said act provides: "Money and credits subject to taxation shall be listed and assessed every year with reference to their value on the first day of May next preceding the assessment."

Section 5 of said chapter provides that: "Every person of full age and sound mind, being a resident of this state, shall list his money and credits. * * *"

Section 7 of said act provides that: "Every person required herein shall make and deliver to the assessor a statement verified by oath of all the money and credits in his possession or under his control, and which by the provisions hereof he is required to list for taxation, either as owner or holder thereof, or as a guardian, parent, trustee, executor, administrator, receiver, accounting officer, partner, agent, or factor, and it shall be the duty of assessors to

require all such persons to sign, date and deliver to them such sworn statement. * * * "

Section 17 of said act provides that: "The assessment shall be reviewed and equalized the same as the assessment of other personal property is reviewed and equalized."

Section 18 of said act provides that: "The county auditor of each county shall compute the taxes each year against each person assessed at the rate herein provided, on a tax list the form of which shall be approved by the Executive Accountant. The tax levied hereunder shall be collected by the county treasurer or sheriff the same as other personal property taxes are collected."

Section 3 of said act, as amended in 1923 (Laws 1923, c. 108, § 3), provides: "Money and credits as the same are defined and construed to mean in Section 2 shall hereafter be subject to an annual tax of four mills on each dollar and no more of the true and cash value thereof, which shall be in lieu of all other taxes. * * * "

We therefore conclude that this action of the Legislature provided for a continuing levy from year to year upon money and credits of persons in this state, at the rate of three mills on each dollar, and that such levy continued during the years 1919 to 1923 and at four mills thereafter.

■ Section 1 of chapter 110 of the 1919 Session Laws of this state provides: "Whenever the County Auditor shall discover or receive credible information, or if he shall have reason to believe that any real or personal property has from any cause been omitted, in whole or in part, in the assessment of any year or number of years, he shall proceed to correct the assessment rolls and add such property thereto, with the valuation."

Section 2 of chapter 110 of the 1919 Session Laws of this state provides: "If the person claiming to own such property, or occupying it, or in possession thereof, resides in the county and is not present, the county auditor shall give such person notice in writing of his action in adding such property to the assessment rolls, describing it in general terms, and requiring such person to appear before him at his office at a specified time within fifteen days after giving such notice, and to show cause, if any, why such property should not be added to the assessment rolls, and if the

party so notified does not appear, or if he appears and fails to show any good and sufficient cause why such assessment shall not be made, the same shall be made, and the county auditor shall charge such property and the owner thereof with the amount of taxes thereon, and enter such valuation and taxes so extended on the tax list of the year for which such omitted property is liable, and to enable him to do so he is invested with all the powers of assessor under this Act. He shall upon completing such assessment and extending the tax thereon, immediately certify to the county treasurer the name of the owner, the value of the property so assessed, and the year or years for which such assessment is made, the name or number of school district and the name of the township, town, or city in which such property is located, and the amount of tax extended against the same, and if such assessment be upon any tract or tracts of real property a legal description of same must be given and there shall be attached to said certificate a warrant for the collection of such taxes, and the county auditor shall, in all cases, file in his office a statement of the facts or evidence on which he made such correction or additional assessment. The auditor so entering such omitted property for taxation shall, at the time of entering the same on the tax rolls, deposit in the United States mails, properly addressed to the taxpayer against whom the assessment is made, a notice of said assessment."

Section 3 of chapter 110 of the Laws of 1919 is as follows: "The county treasurer shall, upon receipt of such certificate, enter said assessment and the taxes so extended upon the duplicate tax list for such year or years, and proceed to collect the same in the manner provided by law for the collection of other taxes."

We are of the opinion that no action could be brought for the collection of these taxes in question, until there had been an assessment. The Legislature fixed the amount of the levy which, as we heretofore state, is a continuing one, and, of course, the levy is an act of the Legislature.

The Supreme Court of Minnesota, in the case of State ex rel Minneapolis Fire Department Relief Ass'n v. City Council of Minneapolis et al., 161 Minn. 103, 200 N. W. 932, 933, defines the term "levy" as follows:

"The term 'levy' has a variety of meanings. As applied to the amount to be raised by taxation, it means the formal and official

action of a legslative body, invested with the power of taxation, whether national, state, or local, whereby it determines and declares that a tax of a certain amount, or of a certain percentage on value, shall be imposed on property subject thereto.

"So, where the Legislature determines to raise the sum which a specific rate of taxation may produce, and delegates to administrative officers the duty of extending the same upon the tax books against the property to be assessed, it levies the same in a legal sense."

It would hardly seem necessary to cite authorities to support the proposition that, in order to have a valid tax, there must be a levy of taxes and an assessment. In this case the Legislature had provided for the continuing levy of the tax on money and credits. In order to complete that levy so that a tax would stand charged on the tax records against the defendant J. P. Zochert, it would be necessary that there be an assessment, and the simple computation of the levy of the proper number of mills on the dollar, when properly entered upon the books of the auditor and the duplicates furnished to the treasurer, would be a tax charged against the decedent.

The county treasurer could not proceed in any way to collect the tax until it was charged against the taxpayer on the books in the county auditor's office, and a duplicate furnished the county treasurer.

The situation seems precisely similar to that before the court in State ex rel Lehner v. Fullerton (1898) 143 Mo. 682, 44 S. W. 741, where the court points out that there is no statute of limitations fixing the time within which an assessment for omitted years must be made, and that the statute with reference to bringing suit does not commence to run until there is, in fact, an assessment upon which suit could be brought.

It would therefore appear that the statute of limitations did not run against this claim for taxes until the taxes had been assessed and the amount of the tax placed upon the tax books by the county auditor. We therefore conclude that the defense of the statute of limitations cannot be maintained in this action.

Counsel for appellants have cited the case of County of Redwood v. Winona & St. Peter Land Co. (State v. Certain Lands in Redwood County), 40 Minn. 512, 42 N. W. 473, as sustaining their

position regarding the statute of limitations in this action. We are of the opinion that the difference in the Minnesota and South Dakota statutes renders that case of no value as an authority. However, conceding that the two cases are not distinguishable as to facts or applicable statutes, we are not willing to accept the view that the statute of limitations becomes operative before the assessment is made. With the exception of this case, above mentioned, in all other cases cited by counsel for the appellant, in support of their claim that the statute of limitations is available to them in this action, we find that the taxes have been levied and assessed and were delinquent and the actions were brought to recover these delinquent taxes, and the right of action accrued, as held by the courts at the time the taxes became delinquent.

█ Counsel also contended that a claim should have been filed with the administrators before the commencement of this action, also claiming that the obligation to pay taxes is a contractual obligation, and in support of that contention cites Ranchman's State Bank v. Lenning, 53 S. D. 250, 220 N. W. 485. The holding in this case, however, is overruled in the case of Smith v. Fischer, 58 S. D. 510, 237 N. W. 718, 722, 77 A. L. R. 524, in which case the court uses this language: "In holding, as we do, that the liability of the directors under section 8990 is purely statutory, we are aware that we are in conflict with what is said in Ranchman's State Bank v. Lenning, 53 S. D. 250, 220 N. W. 485, where, by a divided court, we held that the liability imposed by section 8990 is contractual in nature and falls within the provisions of section 3389, Rev. Code 1919, which forever bars all 'claims arising upon contract,' unless presented within the time fixed by section 3387, Rev. Code 1919. We are satisfied that we were wrong in our holding in that case."

We therefore hold that it was not necessary that a claim be filed before beginning an action to recover these taxes.

█ As to the authority of the auditor to make the assessment against the administrators of the estate of J. P. Zochert, deceased, it would seem that the courts hold that such authority exists.

In the case of Anderson v. Ritterbusch, County Treasurer, 22 Okl. 761, 98 P. 1002, 1008, the Oklahoma court says: "The Supreme Court of Indiana, in Graham v. Russell, 152 Ind. 186, 52 N. E. 806, held that the right of the state, through its proper officers,

to collect taxes on property omitted from the tax lists is a continuing right, and is not terminated by the death of the property owner; the right surviving in the favor of the state against the heirs, devisees, and personal representatives of the deceased. To the same effect are Reynolds v. Bowen, 138 Ind. 434, 36 N. E. 756, 37 N. E. 962; Buck et al v. Miller, 147 Ind. 586, 45 N. E. 647, 47 N. E..8, 37 L. R. A. 384, 62 Am. St. Rep. 436; Redwood County v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N. W. 465, 42 N. W. 473. There seems to be no conflict between the courts of the states upon this question. They all uphold the power of the Legislature to provide remedial procedure for the collection of taxes on property omitted from the tax lists prior to the current year, and hold that the duty of the property owner to pay such taxes to the state is a right, liability, or debt in the broad sense of the term, which the state can enforce."

This question seems to be quite fully discussed in the case of State v. O'Connell, 170 Minn. 76, 211 N. W. 945, 946.

In the opinion they set out the Minnesota statute, which statute was construed and appeared in State v. Certain Lands in Redwood County, supra.

It seems that the Minnesota Court in a prior decision, State v. Eberhard, 90 Minn. 120, 95 N. W. 1115, had held that "personal property is not subject to taxation, while in the hands of the heirs, executor, or administrator, for the amount it should have been taxed during the life of the owner."

Speaking of that case, the court in the State v. O'Connell Case states: "The proceeding in that case was against the executor and the court seems to have taken the view that enforcing the tax against him for the omitted years would be tantamount to imposing a lien upon the property for the amount of the tax. This decision is contrary to all the authorities construing similar statutes no broader than ours."

It also cites 27 Am. & Eng. Enc. (2d Ed.) 701, as follows: "The assessment when made relates back to the time when the property should have been assessed, and is not affected by changes in ownership, consumption, or removal subsequent to the latter date. * * * The death of the taxpayer does not abate the liability to pay taxes on property which escaped taxation during his lifetime; and they are properly assessed against the estate."

The court also cites 26 R. C. L. 351: "Taxes are not canceled and discharged by the failure of duty on the part of any tribunal or officer, legislative or administrative. Payment alone discharges the obligation, and until payment the state may proceed by all proper means to compel performance of the obligation.* * * Omitted property may be constitutionally assessed even if, at the time that the assessment is made, the property has passed out of existence or the owner has died."

The Minnesota court in State v. O'Connell has this to say regarding the case of Bogue v. Laughlin, 149 Wis. 271, 136 N. W. 606, 40 L. R. A. (N. S.) 927, Ann. Cas. 1913C, 1367; " * * * The Wisconsin court reviewed the authorities and referred to State v. Eberhard as relied upon by the respondent to sustain the judgment. The court said that that case rested upon a statute similar to their own, but held that the statute gave authority to the taxing officers to assess omitted personal property after the death of the person liable for the tax and reversed the lower court. The note to this case in 40 L. R. A. (N. S.) 927, reviews the authorities and says: 'State ex rel Vossen v. Eberhard, 90 Minn. 120, 95 N. W. 1115, which is sufficiently set out in Bogue v. Laughlin, and is contrary to the general rule as laid down at the beginning of this note seems to stand alone in its holding.' "

The Minnesota court further says regarding this Eberhard Case: "We are convinced that the holding in that case was erroneous; that it is not only contrary to all the authorities, but fails to give proper force or effect to the statute. While only omitted real estate was involved in County of Redwood v. Winona & St. Peter Land Co., supra, what is there said applies with equal force to omitted personal property. To be sure, the tax upon personal property is not a lien upon the property but only a personal liability of the owner. Yet the owner of personal property omitted from the tax rolls becomes liable for the tax upon it at the time it ought to have been placed theron, and this liability continues until discharged by payment. In the present case the decedent became liable for these taxes in his lifetime. It was an obligation which did not abate at his death. And when the amount is determined as provided by the statute, payment thereof may be enforced against his estate in the same manner as other liabilities which he incurred in his lifetime, in the absence of a statute providing a different procedure."

We therefore hold that, under that statute of South Dakota, the taxing officers had authority to make the assessment and collect the taxes of the said J. P. Zochert from his administrator after his death.

It appears from the records in this case that the county auditor, in assessing the money and credits of J. P. Zochert, deceased, proceeded in accordance with chapter 110 of the Session Laws of 1919 and entered the values of the property, of the money and credits, and the amount of tax thereon, on the tax books for the years 1919 to 1929, inclusive; and also entered the same upon the delinquent tax books in the office of the county treasurer. Section 3 of said act authorized the treasurer, upon receipt of the certificate, which should have been prepared by the auditor, to enter such assessment and taxes so extended upon the duplicate tax list for such years, and proceeded to collect the same in the manner provided by law for the collection of other taxes.

It would seem from the reading of this section that the county treasurer was given authority to proceed at once to collect these taxes, in the same manner that he would have proceeded to collect them had the property been assessed at the time it should have been assessed during the preceding years and entered upon the tax list.

Section 6822 of the Revised Code 1919 authorizes the commencement of the action when any personal taxes heretofore or hereafter levied shall stand charged against any person, and the same shall not be paid within the time prescribed by law. It further provides that the duplicate tax list or lists shall be prima facie evidence of the amount and validity of such taxes appearing due and unpaid thereon, and of the nonpayment of the same; and afterwards, if, on the trial of the action, it is found that such person is so indebted, judgment shall be rendered in favor of such treasurer so prosecuting such action, as in other cases.

The obligation to pay these taxes, as hereinbefore stated, existed during all those previous years in question, and it only remained for the amount thereof to be determined in the manner provided by law, and the entry of the same upon the tax list to authorize the treasurer to bring action to collect.

The trial court ruled that the assessment attempted by the county auditor was void, and that ruling is not appealed from. But

in any event, regardless of the validity of that attempt, the auditor did in fact spread the tax upon the duplicate records in the office of the county treasurer, and we are convinced that thereupon the treasurer became authorized to institute this action under the provisions of section 6822, Rev. Code 1919.

Section 6823 of said Code provides: " * * * The court must in the action ascertain the just amount of personal property taxes due from the person for the year or years for which it is claimed the taxes are delinquent, and if, in its opinion, the assessment or any subsequent proceeding has been rendered void or voidable by the omission or commission of any act required or prohibited, the court shall reassess the property or order it reassessed by the assessor acting at the time of such order, and shall thereupon render judgment for the just amount of taxes due from the defendant for that year or years."

We think the judgment of the court was correct in assessing the property and determining the tax as set forth in the judgment herein rendered. It may be noted, however, that in no place is the court given any authority to charge interest on taxes for these years that the property has escaped taxation, and, in the absence of statute, we cannot see how any interest can be charge against the taxpayer.

It seems to be universally held that, without authority of law, taxes do not draw interest; that they are not debts but are liabilities created by statute; and in support of this we would cite County of Redwood v. Winona & St. Peter Land Co. (State v. Certain Lands in Redwood County), 40 Minn. 512, 42 N. W. 473; United States Trust Co. of New York et al v. Territory, 10 N. M. 416, 62 P. 987; People v. Central Pacific R. Co., 105 Cal. 576, 38 P. 905; Galusha, Treas. v. Wendt, 114 Iowa, 597, 87 N. W. 512; 61 C. J. 72, and cases cited under Note #49; 61 C. J. 1515; Danforth v. McCook County, 11 S. D. 258, 76 N. W. 940, 74 Am. St. Rep. 808.

[ Counsel for appellant claim that the judgment in this case should draw interest only from the 1st of May, following the date upon which the judgment was entered, instead of drawing interest from the date of judgment; but section 1040 of the Revised Code 1919 provides that judgments shall drawn interest at the rate of 7 per cent per annum, and we think that the judgment

in this case should draw interest from its date. See United States Trust Co. of New York et al v. Territory, supra, and City of Rochester v. Joseph Bloss, 185 N. Y. 42, 77 N. E. 794, 6 L. R. A. (N. S.) 694, 7 Ann. Cas. 15; 26 R. C. L. 386.

It is our opinion that the judgment of the circuit court of Minnehaha county should be modified so as to eliminate all interest on taxes, leaving judgment for plaintiff in said action, in the sum of $5,727.56, with interest from November 19, 1931, the date of said judgment, at 7 per cent per annum, and for costs, and the judgment as so modified is affirmed.

Neither party to recover costs on this appeal.

RUDOLPH, P. J., and POLLEY and CAMPBELL, JJ., concur.

SKINNER, Circuit Judge, sitting in lieu of ROBERTS, J., disqualified.

WARREN, J. (dissenting in part). I am unable to agree with the majority opinion permitting the recovery for more than the last six years of taxes for the reason that the six-year statute of limitations has barred and prevents the enforcement and collection of the earlier taxes. The courts of other states, in passing upon statutes of limitations similar to ours, have come to such a conclusion. The following decisions indicate that the six-year statute of limitations is applicable as against the state in an action brought in the name of the state or for its benefit in the same manner as to actions by private parties. County of Redwood v. Winona & St. Peter Land Co. (State v. Certain Lands), 40 Minn. 512, 42 N. W. 473; City and County of San Francisco v. Jones (C. C.) 20 F. 188; San Francisco v. Luning, 73 Cal. 610, 15 P. 311; City of San Diego v. Higgins, 115 Cal. 170, 46 P. 923; Los Angeles County v. Ballerino, 99 Cal. 593, 32 P. 581, 34 P. 329; Clark v. City of San Diego, 144 Cal. 361, 77 P. 973; Dranga v. Rowe, 127 Cal. 506, 59 P. 944, and Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701.

I concur only in so much of the opinion as permits the respondent to recover the taxes for the six years immediately preceding the bringing of the action.