# DISTRICT COURT

## OF THE

# First Judicial District of Kansas Territory.

---

### APRIL TERM, 1860.

---

### THE UNITED STATES AGT. LEWIS L. WELD.

*Indictment : Fugitive Slave Law : Guardian : Infant : Agent : Attorney :
Pleading.*

1. The guardian of an infant owner of a slave in Kentucky can not pursue the slave into another state or territory, to which he has escaped, and there arrest him under the Act of Congress of 18th September, 1850, he not being the person to whom the labor of the fugitive is due by the laws of Kentucky, nor the agent or attorney of such person, empowered in the manner specified by that act.

2. The act requires a special mode by which the agent or attorney shall be authorized to act, and any other authority to him is insufficient. The authority must be by the act of the person to whom the service is due.

3. If the guardian had authority, as such, to arrest the fugitive, it would be necessary, in an indictment for the offense, of rescuing the fugitive from his custody, after the arrest, to state the time, place, and by what authority the appointment of guardian was made.

4. The indictment must distinctly show that the fugitive escaped from the state or territory where the service or labor was due by the laws thereof.

5. The indictment must also show that the defendant knew or had notice that the person arrested was a fugitive, owing service or labor, etc.

INDICTMENT for aiding and assisting the escape of a Fugitive Slave.

This case come on to be heard in the District Court of the First Judicial District of the Territory, on Wednesday, April 18th, 1860, upon a motion to quash

the indictment, and was argued at considerable length
by counsel.

On Monday morning, April 23d, the following opin-
ion was delivered by the court, in which is embraced
all that is necessary to a correct understanding of the
questions involved in the case.

*By the Court*—PETTIT, J.

This indictment is for aiding and assisting the
escape of a fugitive slave after arrest, under the Act
of Congress of September 18th, 1850, usually denomi-
nated the Fugitive Slave Law, and is in the words fol-
lowing :

" United States of America,
" Territory of Kansas,    } sct.
" First Judicial District  }
" September term, A. D. 1859, in the First District
Court of the United States for the Territory of Kan-
sas, sitting in and for said District, for the trial of
causes arising under the constitution and laws of the
United States.

" The United States of America agt. Lewis L. Weld.

" The grand jurors of the United States of America,
empanneled and sworn to inquire within and for the
district aforesaid, in the territory aforesaid, upon their
oaths, present that on the twenty second day of Jan-
uary, A. D. one thousand eight hundred and fifty-nine,
at the county of Leavenworth, in the district afore-
said, in the territory of Kansas, and within the juris-
diction of this court, a person named Peter Fisher,
alias Charles Fisher, alias Charley Fisher, held to ser-

vice or labor in the state of Kentucky, under the laws thereof, the said Peter Fisher, alias Charles Fisher, alias Charley Fisher, then and there being the proprerty of John O. Hutchison and Anna Bell Hutchison, infant children of one Rain C. Hutchison, late of the said state of Kentucky, and the said Peter Fisher, alias Charles Fisher, alias Charley Fisher, having escaped into the said territory of Kansas, was then and there, to-wit, on the twenty-second day of January, A. D. one thousand eight hundred and fifty-nine aforesaid, at the county of Leavenworth, in the district aforesaid, lawfully arrested by the said Rain C. Hutchison, the lawful guardian of the persons and property of the said John O. Hutchison and Anna Bell Hutchison, infant children as aforesaid, as a fugitive from service or labor, from the state of Kentucky aforesaid.  And the said Peter Fisher, alias Charles Fisher, alias Charley Fisher, so lawfully arrested as aforesaid, to-wit, on the twenty-fourth day of January, A. D. one thousand eight hundred and fifty-nine, at the county of Leavenworth, in the district and territory aforesaid, did again, then and there, escape from the said Rain C. Hutchison, guardian of the persons and property of the said John O. Hutchison and Anna Bell Hutchison, infant children as aforesaid, to whom the service or labor of the said Peter Fisher, alias Charles Fisher, alias Charley Fisher, was then due and owing.

"And the jurors aforesaid, upon their oaths aforesaid, do further present, that Lewis L. Weld, late of the county of Leavenworth, in the district and terri-

tory aforesaid, and within the jurisdiction of this court, did then and there, to-wit, on the twenty-fourth day of January, A. D. one thousand eight hundred and fifty-nine, at the county of Leavenworth, in the district and territory aforesaid, with force and arms, to-wit, with a club, knife, pistol, and other hurtful weapons, knowingly and willfully aid, abet and assist the said Peter Fisher, alias Charles Fisher, alias Charley Fisher, so owing service or labor as aforesaid, to escape, as last aforesaid, from the said Rain C. Hutchison, the lawful guardian of the persons and property of the said John O. Hutchison and Anna Bell Hutchison, infant children as aforesaid, contrary to the form of the act of the congress of the United States, in such case made and provided, and against the peace and dignity of the said United States.

" ALSON C. DAVIS, <em>U. S. Dist. Atty.</em>"

The question now before me is a motion made by defendant's counsel to quash the indictment, which takes the place of and raises the same questions as the old practice of demurring.

There are eleven points of objection taken to the sufficiency of this indictment, as follows:

1. That it does not show that the owners, or "their agent or attorney, duly authorized by power of attorney, in writing, acknowledged and certified under the seal of some officer of the court of the state or territory, in which the same may be executed," made the arrest and had the fugitive in custody; or, in other words, that to aid and assist a fugitive from labor in escaping from the arrest and custody of the guardian

of the infant owners, does not subject a person to indictment under the said act of congress.

2. That if to assist a fugitive to escape from the custody of such guardian, is within the statute, his appointment, together with the time, place and authority, by which he was appointed, should be set out or more fully stated in the indictment.

3. That the indictment does not show that Rain C. Hutchison was THEN, that is, at the time of making the arrest, and the escape of the fugitive, such guardian.

4. That it does not show that the fugitive was held to service or labor in Kentucky, before his escape therefrom and arrest in Kansas.

5. That there is not a sufficient seizure and arrest shown.

6. That it does not show that the fugitive was taken forthwith before a court, judge or commissioner, for the purpose of having the case of the claimant heard and determined.

7. That it does not show in what county, district or territory, the indictment was found.

8. That it does not show that the fugitive escaped from Kentucky, or the *place* it is alleged he owed the service.

9. That the fugitive is described by an *alias* of his Christian name.

10. That the indictment does not show that the defendant knew or had notice that Fisher was a fugitive from labor.

11. That the ESCAPE, after the arrest by Hutchison, is not sufficiently alleged.

The importance of the questions, and the deep interest the subject always and justly excites, have induced me to listen patiently to the long and able arguments of learned counsel, both for the government and the defendant, with an earnest and sincere desire to arrive at a proper legal conclusion. Believing, as I do, in the clear constitutionality of this law, the power and duty of congress, under the then existing circumstances, to pass it, and the duty of every citizen to obey it, and being willing and desirous that all rights under it shall be promptly and amply protected, and all crimes created by it prosecuted, and all penalties and punishments provided for in it certainly and condignly inflicted; yet it is my duty to see that the defendant is not put to the hazard, vexation and expense of a trial on an imaginary case, or one that is not provided for by the law itself, nor in real cases within the law, unless he is charged according to the strict rules of criminal practice and pleading.

I feel, in my position, the full force of the charge and instructions given by Queen Elizabeth to her newly appointed judges: "That you take care and remember to judge as well for the subject as my majesty." So I am instructed by the constitution, the laws, and my oath of office, to take care and remember that I judge as well for the citizen as for the majesty of the law. If we would have the respect of the citizen for and obedience to the laws, we should be careful that our courts do not extend their criminal provisions beyond the cases provided for; and although it may seem to us that there are other cases

that ought to have been provided for, it is not the right of the court to ingraft or interpolate into the law, by construction, such provisions as will cover such other cases not provided for by its terms. I think the books will be searched in vain to find a case, in criminal proceedings, where the courts have warrantably stretched law to cover such an one as was not within the letter of its reading; but, on the contrary, the courts have often held that cases which were within the letter of the law, were not within its spirit, and, therefore, not punishable by it, as in the oft-cited case where, by statute, it was made highly penal to "let blood" in the street, and a surgeon was indicted for using his lancet and bleeding a man in the street, to restore circulation, who had been stupefied by an injury. The judges properly held that though the case was within the letter of the law, it was not within its spirit, and the accused was discharged.

Congress has passed two laws on the subject of the reclamation of fugitives from labor: the first, on the 12th day of February, 1793, and by it the owner, his agent or attorney, was empowered to seize and arrest the fugitive, etc., but there is no provision that the authority of the agent or attorney shall be in writing, acknowledged, etc., and it has, therefore, been held that parol authority to the agent or attorney, is sufficient under that law. Giltner agt. Gorham, 4 McLean, 402. Nor did this law create any indictable offense, but subjected the violator of the rights of the owner to penalties, to be recovered in civil actions.

The second was passed on the 18th of September, 1850, and is the one under which this indictment was found, the 16th section of which provides : " When a person held to service or labor in any state or terri- tory of the United States, has, heretofore, or shall, hereafter, escape into any other state or territory of the United States, the person or persons to whom such service or labor may be due, or his, her or their agent or attorney, duly authorized by power of attorney, in writing, acknowledged and certified under the seal of some legal officer or court of the state or territory in which the same may be exe- cuted, may pursue and reclaim such fugitive person," etc.    Other parts of this law make it indictible and punishable by a heavy fine and imprisonment for any person to hinder or obstruct the owner or his agent or attorney, appointed as aforesaid, in the seizure or arrest of such fugitive, or to aid or assist such fugitive to escape from the claimant, his agent or attorney, appointed and empowered as provided by the act. This law being a criminal and highly penal one, must, according to all rules of interpretation known to me, be construed strictly; yet it need only be con- strued by the ordinary rules applicable to civil trans- actions, such as that when one person or class of per- sons is named in a power of attorney, or an act of the law-making power, as being authorized to do a certain thing therein named, all other persons are thereby ex- cluded from doing the same thing as effectually as if they were positively forbidden.    If the legislature au- thorized A to do a thing, B can not do it by virtue of

the grant to A. If A make B a power of attorney to sell his farm, C can not make the sale by virtue of the power given to B; nor can B sell any thing else belonging to A by virtue of the power of attorney.

The application of these well-known and familiar rules would be sufficient, even in a civil case, to exclude the power of a guardian to act where the authority was only given to the person of the owner, or his agent or attorney, appointed in a particular way, and certainly the rule is not less rigid or applicable in criminal cases.

There are two classes of persons authorized by this act to make the arrest: The owner, or his agent or attorney, appointed in a particular way, and to hinder and obstruct whom, in making it, or to aid or assist the fugitive to escape from the custody of whom, is an indictible offense; but to aid or assist a fugitive arrested by, and in the custody of, a guardian of infant owners, to escape from such custody, is not an indictible offense, however it may subject the party to a penalty in the civil action provided for by these acts. Welmer agt. Sloan, 6 McLean, 259; Gibbons agt. Sloan, id., 273. In re Kirk, 1 Parker C. R., 67.

But it was said in argument, that if this custom should prevail, then infants, in their cradle, would be worse off than adults, a condition we are not at liberty to presume congress intended to leave them in, as they could neither make the arrest themselves, nor execute the proper power of attorney. To this it is a sufficient answer to say, that adults would not have had the sanction and benefit of this law if congress

13

had not given it to them; and it was discretionary with the law-making power to confer it on, and withhold it from, whomsoever it saw fit.   And if it was an oversight and unintentional, it is simply a *causus omissus*, which the court can not supply.   But I can see that congress may have thought there was a very good reason for conferring this power upon an adult, or a person of his selection and appointment; and for withholding it from the rashness and indiscretion of youth, and such persons as may have been appointed by courts, and who may have no interest in, or kind feelings for the negro, which is almost the certain and necessary consequence of the long existence of the relation of master and slave.   Whatever may have been the motive, it is clear to my mind that congress has not conferred the power on the guardian, as he is neither the owner, nor the agent or attorney appointed in the manner prescribed by the Act of 1850.

In thus disposing of the first objection to the indictment, the whole question is disposed of, and this opinion might end here; but as other points of objection have been raised, I shall lightly notice them, and give my conclusions without much elaboration.

The second objection is, in my judgment, well taken. It is said in the indictment, that Rain C. Hutchison was " the lawful guardian of the persons and property of the infant owners."   This he could not have been, unless he had been appointed by will, or by some court or tribunal; as the father, without such appointment, is the only lawful guardian of the *persons* of his infant children, for maintenance and education, and

has no power or control over their property. If such an appointmen had been made, as would give him power over the property of his wards, there must be some record evidence of it (unless lost or destroyed, in which event, on the proper allegation and showing, parol evidence of contents could be given) ; and this is a traversable fact, and the strictness of criminal pleading requires that every fact relied upon to constitute the crime, and upon which the conviction depends, shall be set out and described with as much particularity as the nature of the case will allow. Hence, I think the time, place, and the authority by which the appointment was made, should have been set out, in order that the court might be able to see that it was a legal appointment, and that the defendant might prepare to controvert it. The allegation that he was the "legal guardian," is a conclusion of law, which is not admissible in pleading. Facts should be stated, in order that the court may deduce the conlusion of law therefrom.

It is said by the counsel for the United States, that the appointment, or record of it, was not in their possession, and that they had no way to get it. This is a mistake. The government has, at least, all the rights and powers of individuals to produce papers, records, or copies thereof; and it is clear that this allegation would have to be proved on the trial by the record, if not lost or destroyed. It was as easy to have procured it before the indictment as before the trial.

The 3d, 4th, 5th, 6th, 7th and 9th points are not well taken; the alleged defects not being found, on

reading the indictment, as they are not necessary to be stated in it.

The 8th objection is well taken, as the indictment does not show, otherwise than by implication, that the escape was from *Kentucky*, the state in which he was held to service. The indictment may be true in this respect, and yet the escape may have been from Ohio or Indiana.

The 10th objection is, that the indictment does not show that the defendant knew or had notice that Fisher was a fugitive from labor. This is also fatal. The Acts of 1783 and 1850, alike use the words, "knowingly and willfully," and under the former, in a civil suit to recover the penalty, it is held, in Driskill agt. Parrish, 3 McLean, 631, that, in order to subject the defendant to the penalty, he must have notice that the colored persons are fugitives from labor, and that the agent has authority to arrest them.

It is difficult to see why a less rigid rule should prevail in a criminal prosecution under the Act of 1850. This notice is essential to constitute the guilt of the defendant. Without it he can not be convicted, and the indictment must show, on its face, clearly and undoubtedly, his guilt, or it is bad. This notice may, on the trial, be shown by, or inferred from circumstances, as other facts, not reduced to writing, may be shown.

This opinion has been hastily written in the midst of turmoil, interruption and confusion—in the absence of a library to consult, and without time to correct or pay much attention to legal diction, but I am confident

that, in its main features, it will stand the test of the most searching and rigid legal and judicial criticism.

ORDER.—The motion to quash is sustained.