## OSAGE & OKLAHOMA CO. v. MILLARD, Co. Treas., *et al.*

No. 6099.    Opinion Filed January 9, 1915.

(145 Pac. 797.)

1. **TAXATION—Assessment of Omitted Property—County Officers.** Section 7449, Rev. Laws 1910, does not purport to confer authority upon the county officers, or any one with whom the county commissioners may contract, to assist in the discovery of property not listed and assessed, or to assess property of a railroad or other public ervice corporation.

2. **SAME—Assessment—Jurisdiction—Property of Public Service Corporation.** That part of section 21, art. 10, of the Constitution which provides that the state board of equalization shall assess all railroad and public service corporation property confers exclusive jurisdiction on such board; and the Legislature is without power to vest authority in any other person or officer.

Riddle J., dissenting.

(Syllabus by the Court.)

Original action for writ of prohibition by the Osage & Oklahoma Company against Ret Millard, County Treasurer of Osage county, and another. Writ granted.

*Ames, Chambers, Lowe & Richardson,* for plaintiff.

*Stuart, Cruce & Cruce* and *Ledbetter, Stuart & Bell,* for defendants.

RIDDLE, J. This is an original proceeding in this court, instituted by plaintiff against defendants, praying for a writ of prohibition. Plaintiff, in substance, avers that defendant Ret Millard is county treasurer of Osage county; that C. H. Pittman is the special tax auditor of said county, engaged in attempting to discover property, personal and real in said county not theretofore listed and assessed for taxation under the laws of this state; that plaintiff is a public service corporation, and that it owns its franchise in the city of Tulsa for the distribution and sale of gas

to its inhabitants; that it maintains a pipe line in a gas field in Osage county and in the city of Tulsa, and maintains and operates a distributing plant in the city of Tulsa under a franchise granted by said city. Plaintiff further states that during all times mentioned its property, under the Constitution and laws of the state, was subject to assessment by the state board of equalization; that it has for each of the years hereinafter mentioned filed with the state auditor a list of all its property, real, personal, and mixed, as the same existed on the 1st day of February in each year, as required by article 4, c. 72, Rev. Laws 1910; that said C. H. Pittman, as special tax auditor of Osage county, has filed a report with said county treasurer giving a list of property belonging to plaintiff for each of the years named; that the same consists of gas leases, and the value thereof for each of said years is alleged to be as follows, to wit:   1908, $156,-000; 1909, $134,000; 1910, $863,000; 1911, $1,033,000; 1912, $1,423,000; 1913, $2,216,000. Plaintiff states that afterwards, on February 9, 1914, said county treasurer notified plaintiff to appear at his office on February 20, 1914, and show reason, if any, why said property should not be added to the tax rolls and taxes collected thereon for the years and respective amounts above stated. It is further alleged that its gas, oil, and minerals are part of the real estate and are assessable and taxable as such; that the gas leases, if property, constitute an investment of the capital of plaintiff; and that all the money and capital of plaintiff was included in the various reports made to the state auditor and considered and assessed by the state board of equalization; that the state board of equalization is vested with the sole and exclusive jurisdiction to assess the property belonging to plaintiff; that defendants have no authority or jurisdiction under the law to assess the property of plaintiff and place the same upon the tax rolls of Osage county. It is then alleged that defendants, if not prohibited by this court, will proceed to assess said property, and that the same will be extended upon the tax rolls by the treasurer. Plaintiff prays that defendants be restrained.

Defendants filed their answer to the petition, the first part of which was in the nature of a general demurrer. It is then alleged that plaintiff is indebted to Osage county for taxes for the years set out in the petition, and that no offer has been made to pay any of the taxes for said years. It is denied that the report made by plaintiff to the board of equalization for the respective years contains a list of all the property owned by plaintiff. It is further alleged that at the time plaintiff filed with the state auditor its report for the years aforesaid, it was the owner of valuable gas leases, amounting to the values stated in plaintiff's petition, and that plaintiff purposely and wrongfully refused to include said leases or to include said property in such report so filed with the state auditor; that plaintiff has not paid to the state or to the officers of said county any tax upon said leases, nor has it at any time offered to pay any such tax; that by reason of the failure of plaintiff. to furnish the state board of equalization a list of the various leases which plaintiff owned during the years before mentioned, it deprived said state board of equalization of the knowledge that it owned said property, and deprived said board of the power to assess same, and plaintiff has waived its right to insist that such property must be assessed by such board. There was no reply filed to this answer, but defendants filed a motion for judgment on the pleadings. The issue as thus made is presented for our determination.

On a reargument of this case upon a petition for rehearing and a further consideration of same, the other four members of the court have reached the conclusion that the original opinion in this case is not in harmony with the weight of authority, and that a rehearing should be granted, the former opinion vacated, and a writ of prohibition granted as prayed.

Defendants are proceeding to assess and extend on the tax rolls for taxation plaintiff's property under section 7449, Rev. Laws 1910, which reads:

"The board of county commissioners of any county in this state may contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed, as required by existing laws, and fix the compensation at not to exceed fifteen per cent. of the taxes recovered under this article. Before listing and assessing the property discovered, the county treasurer shall give the person in whose name it is proposed to assess the same, ten days' notice thereof by registered letter, addressed to him at his last known place of residence, fixing the time and place when objections in writing to such proposed listing and assessment may be made. An appeal may be taken to the county court for the final action of the treasurer within ten days, by giving notice thereof in writing and filing an appeal bond, as in cases appealed from the board of county commissioners to the district court."

It is the contention of plaintiff: (1) That it being a public service corporation, under article 10, sec. 21, of the Constitution, the state board of equalization has exclusive jurisdiction to assess all public service corporation property; and (2) that section 7449, Rev. Laws 1910, *supra,* does not on its face purport to confer jurisdiction on the tax ferret or the county officers to assess property belonging to public service or railroad corporations, and it is contended that, if said provision of the statute is broad enough to cover property belonging to public service or railroad corporations, to that extent the same is in conflict with article 10, sec. 21, *supra.* So far as applicable here, said section of the Constitution, *supra,* referring to the state board of equalization, provides: "And they shall assess all railroad and public service corporation property."

It is the conclusion of the majority of the court that this contention must be upheld; that the language of the Constitution in vesting power in the state board of equalization necessarily excludes the power of the Legislature from conferring authority upon any other person or officer to assess any property belonging to such corporation; that this language is equivalent to saying that the power is vested in the state board to assess all railroad

and public service corporation property; and that this power shall not be vested in or exercised by any other official. The case of *Adams v. Tonella,* 70 Miss. 701, 14 South. 17, 22 L. R. A. 346, would seem to sustain this construction. In the Mississippi Case it is shown that the Constitution of that state of 1869 provided in section 1, art. 5:

"A sheriff, coroner, treasurer, assessor and surveyor shall be elected in each county by the qualified electors thereof, who shall hold their offices for two years, unless sooner removed."

It is held by the court in that case that the Constitution, in providing the office of assessor and confining the office of territorial limits of his county, divided the state into as many taxing districts as there were counties; that the office of assessor spoken of in the Constitution is one of known and settled functions, and in providing that an assessor shall be selected in the manner provided by law for each county it is to be presumed that the framers of that instrument intended to provide for the performance by him, substantially at least, of those duties which had theretofore pertained to his office. *French v. State,* 52 Miss. 760. The court further stated:

"And an assessment can only be made by the officer designated by law to make it. Welty, Assessments, sec. 10. When the Constitution devolves that duty upon a particular person, the Legislature may not substitute another."

The court cites *People v. Kelsey,* 34 Cal. 473; *People v. Hastings,* 29 Cal. 450; *People v. Sargent,* 44 Cal. 434; *Houghton v. Austin,* 47 Cal. 648; *Richmond & D. R. Co. v. Orange County Commissioners,* 74 N. C. 506; *Wilmington & O. & A. R. Co. v. Brunswick Co. Com'rs.* 72 N. C. 10. The court, continuing said:

"In *Houghton v. Austin,* above cited, the rule that the Legislature could not devolve the duty of assessing property upon any other tribunal or officer than the assessor provided for by the Constitution was carried to the extent of annulling a law creating

a state board for equalization of taxation among the several counties of the state."

It was said by this court in the case of *State ex rel. Haskell, Governor, v. Huston et al.,* 21 Okla. 782, 97 Pac. 982, by Mr. Justice Turner, speaking for the court:

"It is a familiar rule of construction, as laid down in the syllabus of *United States v. Weld, McCahon,* 185 Kan. (Dassler's Ed.) 591 [Fed. Cas. No. 16,660], that: 'When one person, or class of persons, is named in a power of attorney, or an act of the lawmaking power, as being authorized to do a certain thing therein named, all other persons are thereby excluded from doing the same thing as effectually as if they were positively forbidden."

In the case of *People v. Draper,* 15 N. Y. 532, Chief Justice Denio says:

"A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden. I do not mean that the power must be expressly inhibited, for there are but few positive restraints upon the legislative power contained in the instrument. The first article lays down the ancient limitations which have always been considered essention in the constitutional government, whether monarchial or popular; and there are scattered through the instrument a few other provisions in restraint of legislative authority. But the affirmative prescriptions, and the general arrangements of the Constitution, are far more fruitful of restraint upon the Legislature. Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, create implied limitations upon the lawmaking authority as strong as though a negative was expressed in each instance." *In re Leasing of St. Lands,* 18 Colo. 358, 32 Pac. 986; *Western Union Tel. Co. v. Trapp,* 186 Fed. 116, 108 C. C. A. 226; *State ex rel v. Brunst,* 26 Wis. 412, 7 Am. Rep. 84; *King v. Hunter,* 65 N. C. 603, 6 Am. Rep. 754; *Anderson v. Ritterbusch,* 22 Okla. 761, 98 Pac. 1002.

We are also of the opinion that section 7449, Rev. Laws 1910, *supra,* does not confer authority upon the county taxing officers to assess property belonging to a railroad or public service corporation. The language of said section is that:

"The board of county commissioners of any county in the state may contract with any person or persons to assist the proper county officers of the county in the discovery of property not listed and assessed as required by existing laws," etc.

We hold that this language simply means that such person with whom the county commissioners might contract to assist the proper taxing officers in the county in the discovery and listing for taxation such property only as the county authorities were authorized in the first instance to assess for taxation, and that it was not the intention of the Ligeslature by the provision of the statute, *supra,* to include property belonging to a railroad or public service corporation over which the county officers had no jurisdiction to assess for taxation.

From the foregoing we are of the opinion that defendant had no jurisdiction or authority to list for taxation or to extend on the tax rolls the property belonging to plaintiff, and that the writ of prohibition should be granted; and it is so ordered.

KANE, C. J., and TURNER, LOOFBOURROW, and BLEAKMORE, JJ., concur.

RIDDLE, J. (dissenting). I am unable to agree with the conclusion of the majority of the court, expressed in the foregoing opinion. In my judgment, the writ of prohibition should be denied. We are dealing with the power of the sovereign, and only incidentally with the power and authority exercised by the taxing officials. Speaking of the sovereign power over the subject of taxation, Cooley, in his work on Constitutional Lim. p. 678, states:

"The power to impose taxes is one so unlimited in force and so searching in extent that the courts scarcely venture to declare

that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. * * * The Legislature of every free state will possess it under the general grant of legislative power, whether particularly specified in the Constitution among the powers to be exercised by it or not."

Again, the author, on page 679, quoting from Chief Justice Marshall, says:

"The people of a state, therefore, give to their government a right of taxing themselves and their property; and, as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse. * * * This vital power may be abused; but the interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security where there is no express contract against unjust and excessive taxation, as well as unwise legislation generally. * * * It is unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse, of the power.'"

It must be remembered that the very term "state" implies that there is somewhere a sovereign power, whose only limit is its will, a power of that transcendent, supreme, illimitable nature, which, in the ascription of it to the English Parliament, is described the strong word "omnipotence." In the United States this absolute, uncontrollable power resides in the people of each state in the aggregate, as a separate and independent community. As is expressed by Chief Justice Gibson:

"In every American state the people in the aggregate constitute the sovereign, with no limitation of its power, and no trustee of it but its own appointee."

Lord Coke says:

"That the power and jurisdiction of Parliament is so transcendent and absolute that it cannot be confined, either for causes or persons, within any bounds."

Blackstóne says so long as the English Constitution lasts "we may venture to affirm that the power of Parliament is absolute and without control." It has been well said that the people in the States collectively have all the power which was vested in the English Parliament. The whole, unbounded legislative power of the people is granted to the General Assembly, subject to express exception.

It is clear to my mind that, when the framers of the Constitution vested the power in the state board of equalization of assessing, it was intended that this should relate primarily to the assessment of property in the first instance, and they had no reference to this character of property. The Legislature has plenary power over the subject of taxation, and it was not necessary for any specific grant of power in the Constitution to authorize it to act. As said by Chief Justice Marshall, this is one of the very attributes of sovereignty; thus, unless the power has been expressly taken from the Legislature, it retains it to the fullest extent. The fact that the power has been conferred on the state board in the broad language as is used in the Constitution ordinarily would be construed to be an inhibition by necessary implication. But this is not true as applied to the taxing power. The weight of authority is, in my judgment, that unless the Legislature is, by express terms, prohibited from exercising this power, it retains the same, and may exercise it in any manner it sees proper, and except where it is expressly restrained. Section 36, art. 5, Const., provides:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

We are told that this provision has no application here; that, fairly construed, it means no more than the Constitution, in granting any specific authority to the Legislature, shall not work

a restriction, limitation, or exclusion upon the Legislature from legislating upon such subjects so specifically referred to, or any other subject. While this may be, and no doubt was, the primary intention of the framers of the Constitution in inserting this provision, yet the language is very broad and sweeping, and I am of the opinion that it may fairly be construed to be otherwise applied. In my judgment, the court in two other opinions has given it a broader construction. It was said by Justice Williams, in the case of *State ex rel. v. Hooker,* 22 Okla. 712, 98 Pac. 964:

"A restriction or limitation upon the power of the Legislature, upon any subject of legislation, will not be presumed or implied, unless from the entire instrument it clearly appears that it was so intended."

. Justice Kane, in *Anderson v. Ritterbusch,* 22 Okla. 761, 98 Pac. 1002, speaking for the court in discussing the collection of taxes on property omitted from the tax rolls, stated:

"(19)   Section 36, art. 5 (Bunn's Ed. sec. 109), of the Constitution, providing that 'any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever,' was incorporated into the Constitution to exclude the idea of the exclusion of power by implication.

. "(20)   It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

It is reasonably clear that this language extends the application of this section of the Constitution further than is contended for in this case. Even without this provision of the Constitution, and discussing the question as though it had not been inserted, I am of the opinion that the Legislature is not limited in the assess-

ment and collection of taxes on omitted property on account of the provision of the Constitution conferring authority upon the state board of equalization. This position is supported by high authority and sustained in principle by the rule announced in *Anderson v. Ritterbusch, supra.*

In the case of *Dorman v. State,* 34 Ala. 216, it is said:

"In the ascertainment of the respective powers of the federal and state governments, this fundamental distinction is to be observed: That whereas, by the federal Constitution the states have delegated to the government thereby organized only specifically enumerated powers, withholding all not named, the state Constitution, on the contrary, contains a grant from the people of all powers not expressly withheld. In the federal Constitution the enumeration of powers is of those delegated; in the state Constitution it is of those reserved. But for the enumeration, the federal government would have no powers; but for the reservations the state government would possess all the powers inherent in the people. Hence it has grown into a maxim of universal acceptance, among both jurists and statesmen, that 'the federal government can do nothing but what is authorized expressly or by clear implication, while that of the state can do whatever is not prohibited.' *Sharpless v. Mayor,* 21 Pa. 147-160 [59 Am. Dec. 759]; *People v. Draper,* 25 Barb. [N. Y.] 359, 360; *Norris v. Clymer,* 2 Barr [3 Pa.] 285; Calhoun's Works, vol. 6, p. 224. * * * The whole, unbounded legislative power of the people is granted to the General Assembly, subject only to expressed exceptions. Without these exceptions, the power would be as unlimited as that of the people from whom it is derived; for the express reservation of a particular thing out of a general grant proves that the thing reserved would be within the general grant, had not the reservation been made."

In the case of *Capital City Water Co. v. Board of Revenue of Montgomery County,* 117 Ala. 290, 23 South. 970, the court said:

"It is a well-accepted principle of law that the state Constitutions are not in their nature enabling acts, to which class the Constitution of the United States belongs, but are limitations on legislative power, and that the Legislature may pass any law not

in conflict with the state or federal Constitutions; the rule being that 'the federal government can do nothing but what is authorized expressly or by clear implicaion, while that of the state can do whatever is not prohibited.'"

In 37 Cyc. 727, it is stated:

"The power of taxation being essential to government, and being usually confided in the largest measure to the legislative discretion, constitutional limitations upon its exercise, will not be inferred or implied, but must be distinctly and positively expressed. * * * In the absence of constitutional restrictions, the power of the Legislature in regard to taxation is practically absolute and unlimited, so long as it is exercised for public purposes. * * *"

See, also, *Walcott v. People*, 17 Mich. 68; *State ex rel. Ellis et al. v. Thorne*, 112 Wis. 81, 87 N. W. 797, 55 L. R. A. 956; *Southern R. Co. v. St. Clair*, 124 Ala. 491, 27 South. 23.

In the case of *Trenton Water Power Co. v. Parker*, 32 N. J. Law, 426, the court said:

"No limitation or restriction upon the exercise of this essential attribute of government will be raised by implication. The intention to limit or abridge must be declared by *positive legislative enactment, expressed in as clear and unambiguous terms as would be required to constitute a total renunciation of the power of taxation.*" (Italics ours.)

This language is in harmony with the language of this court in the case quoted from *supra*, and substantially to the same effect is the case of *State ex rel. Davis & Star Lumber Co. v. Pors*, 107 Wis. 420, 83 N. W. 706, 51 L. R. A. 917, where it is said:

"This legislative purpose is entirely obvious, and should be given complete effect, unless insuperable obstacles prevent. * * * Again, it is urged that, if the property is not in existence, it cannot be within the jurisdiction of the assessors. This contention loses sight of the consideration that the whole subject of taxation is within the control of the Legislature, subject only to the constitutional requirement of uniformity, and that branch of

the government can confer jurisdiction to apportion and collect taxes when and where it deems best. *Cross v. Milwaukee,* 19 Wis. 509; *North Carolina R. Co. v. Com'rs. of Alamance,* 82 N. C. 259."

In the case of *Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128, it is said:

"In our inquiries into the nature and limits of legislative power, as affecting this subject, we are not disposed to controvert or materially qualify the principle so emphatically enunciated by this court in *Dorman v. State,* 34 Ala. 216, 236, that there are no limits to the legislative power of the state government, save such as are written upon the pages of the state or federal Constitution. 'It has never been questioned, so far as I know,' says Redfield, C. J., in *Thorpe v. R. R. Co.,* 27 Vt. 142 [62 Am. Dec. 625], 'that the American Legislatures have the same unlimited power in regard to legislation which resides in the British Parliament, except where they are restrained by written Constitutions. That must be conceded, I think,' he says, 'to be a fundamental principle in the organization of the American states.' Cooley on Const. Lim. 88, 89. And this power and jurisdiction of Parliament, as expressed in the familiar language of Sir Edward Coke, 'is so transcendent that it cannot be confined, either for causes or persons, within any bounds.' 2 Coke Ins. 36."

It was appropriately said by Justice Kane in the case of *Anderson v. Ritterbusch, supra:*

"The 'taxing power,' when acting within its legitimate sphere, is one which knows no stopping place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by any obstacles, it may return again and again until, the way being clear, the tax is collected. In laws for the assessment and collection of taxes due on omitted property, it is uniformity of burden, and not identity of method of enforcement, which is required by constitutional principles."

It may be well to hold that officers exercising authority in assessing and collecting taxes are, by implication, limited, or that

persons, when given the right to pursue different remedies may, by implication, be limited; but this rule should not be extended to the state—the sovereign itself. This is the rule, in effect, laid down in 21 Encyc. of Pl. & Pr. p. 382:

"Another line of decisions establishes the rule that the implied obligation to pay a tax carries with it the remedy by an action against the taxpayer to enforce the payment thereof, and that other remedies provided for the collection of the tax are not exclusive unless they are made so expressly by the statute; and it has been said that the rule as to the exclusiveness of the remedy provided by statute is obligatory upon the tax collector alone, and it is not a rule for the conduct of the state or sovereign."

The same rule was announced by the Supreme Court of the United States in the case of *Dollar Sav. Bank v. United States,* 19 Wall. 227, 22 L. Ed. 80. It was said by the Supreme Court of Minnesota, in the case of *Redwood v. Winona & St. Peter Land Co.,* 40 Minn. 512, 41 N. W. 465:

"The grand fallacy in this argument is in assuming that statutes like the one under consideration are acts unauthorizing original taxation. The tax was a debt or liability which the land owed in the year which it ought to have been assessed. Such statutes are purely remedial in their nature, and only go to confirm pre-existing rights by adding to the means of enforcing existing obligations. * * * And the owner cannot object to any particular method adopted for that purpose, provided it operates equally and justly."

It is said to hold that the Legislature may confer the power of assessor on other persons than the state board will create confusion and flustrate the taxing system. This argument might, perhaps, appeal to the lawmaking body; but if the power has not, by express provisions, been taken from the Legislature, it should have no weight with the court, and as a further reply to this argument in the language of the Supreme Court of Mississippi in the case of *Adams v. Clarke,* 80 Miss. 134, 31 South. 220:

"we are not concerned with consequences. That is no argu-

ment to address to a court, if that be all that there is to be said. We are concerned only to ascertain clearly what the right is, and, having ascertained it, to maintain it inflexibly."

It is suggested that the tax ferrets are sources of annoyance and disturbance, and their powers should not be extended. There is, no doubt, a certain class of citizens who view the tax ferret from the same standpoint that those who honestly list their property for taxation view the tax dodger; but the existence of the latter has created the necessity of the former. About all which is appropriate to say is that, had we never had the tax dodger, we would have had no necessity for the tax ferret. Taxes are a heavy burden, when all the taxable property bears its proper proportion, and the court should, in no way, hinder, cripple, or impede the sovereign in its ligitimate and honest effort in executing that most wise and equitable provision of the Constitution— that taxes shall be uniform and all property shall be assessed and taxed at its fair cash value.

We are here dealing with an emergency, which should make an exception to the general rule to which the authorities in the main opinion apply, as was said by the Supreme Court of Mississippi in *Adams v. Tonella, supra,* and the main authorities in support of the opinion of the majority of the court:

"The provisions of tne statute authorizing boards of supervisors to appoint a suitable person to make the assessment when the assessor has failed to discharge his duty, and conferring power on the sheriff to add persons or property to the roll which have been omitted by the assessor, are widely different in their scope, purpose, and effect from the scheme provided by chapter 126 of the Code in relation to the state revenue agent. They are provisions to meet emergencies, and displace as little of the machinery by which a general and uniform plan of assessment is carried on throughout the state as is possible. * * * But chapter 126 of the Code displaces the whole scheme of taxation."

In my judgment, the writ should be denied.