PUBLIC SERVICE CO. OF OKLAHOMA v. PARKINSON, County Treas.

No. 30852. Feb. 2, 1943.

Rehearing Denied June 15, 1943.

*143 P. 2d 125.*

Mastin Geschwind, of Oklahoma City, for plaintiff in error.

C. H. Rosenstein, Dixie Gilmer, County Atty., and Wm. M. Taylor, Asst. County Atty., all of Tulsa, for defendant in error.

WELCH, J. In this action the taxpayer seeks to recover $8,088.71 taxes paid under protest. The tax was levied in 1938 for the benefit of the sinking funds of former school districts No. 4, No. 12, No. 28, and No. 1 in Tulsa county. The amount plaintiff seeks to recover is the total amounts so levied against its property for that purpose.

Prior to the levy the said school districts had been annexed by and had become a part of school district No. 22 of Tulsa county. At the time of the levy the taxable property within the respective areas of such annexed districts was liable to taxation for retirement of prior indebtedness. Missouri, K. & T. Ry. Co. v. Excise Board of Bryan County, 181 Okla. 229, 73 P. 2d 173. The legality of the rate of levy has been established. Texas-Empire Pipe Line Co. v. Tulsa County Excise Board, 187 Okla. 591, 104 P. 2d 441.

The theory of plaintiff's case is that its taxable property within such area was not assessed. That the valuations and assessments as made to appear upon the tax rolls of Tulsa county by the county assessor are void. Plaintiff does not contend that it did not own taxable property within such areas equal to the respective valuations as shown by such rolls.

In its return of property for tax purposes plaintiff merely reported that it owned certain taxable property located in school district No. 22 as it then existed. The State Auditor certified to the county treasurer that the State Board of Equalization had assessed plaintiff's property in school district No. 22 at $4,-902,400. No further details relating to the action of the state board was contained in the auditor's certificate.

After the receipt of such certificate the county assessor caused his tax rolls to show taxable property belonging to plaintiff as assessed within the geographical areas of the first named former school districts as follows:

| | |
|---|---|
| No. 4 _____$ | 51,140 |
| No. 12 _____ | 32,661 |
| No. 28 _____ | 1,948,787 |
| No. 1 _____ | 17,079 |

It is plaintiff's position that the State Board of Equalization has exclusive power to assess its property; that such board failed to specify the assessed value in each of the several areas, which resulted in a total failure to assess the same in such four areas for the purposes here shown, and that the county assessor has no power to cause his tax rolls to appear as shown, because he had no authority to assess this character of property.

No reported case similar in fact has been called to our attention. We have, however, some well-established legal principles from the cited cases and others which guide us in considering the present issues. We take it as elementary that the law does not intend to deliberately aid a property owner to escape payment of his just proportion of taxes which his taxable property should bear. Should plaintiff's contentions here be sustained, including its suggestion that its property cannot now be assessed, then this property, though its taxable value and physical situs is not contested, would completely escape this legally levied tax.

It is true that certain formalities must be observed in the subjecting of property to taxation. This is so in the interest of an orderly system, and, probably of more importance, in the protection of the individual taxpayer. Frazier v. Prince, 8 Okla. 253, 58 P. 751, and Oklahoma Tax Commission v. Rittenhouse, 176 Okla. 291, 55 P. 2d 70.

Though in Independent Pipe Line Co. v. State Board of Equalization, 168 Okla. 432, 33 P. 2d 797, it was held that a record of an assessment, appearing on the tax rolls as prepared by the county assessor, was not void, though the prop-

erty should have been assessed by the State Board of Equalization, and it seems there admitted that such board took no action.

One of the most important acts in subjecting property to tax is the matter of assessment, and that is the step with which we are here concerned. The assessment, to become invulnerable, must be made by the officer or officers clothed with lawful authority so to do. 26 R. C. L. p. 354, par. 311. This is so in the interest of an orderly system and to provide an authoritative forum before which the owner may be heard for his protection. Such authority in this state is vested in the State Board of Equalization with respect to this character of property. Section 21, art. 10, Okla. Constitution, 68 O. S. 1941 § 131; Osage & Oklahoma Company v. Millard, Co. Treas., 45 Okla. 334, 145 P. 797.

If there is shown here any act of omission or commission, which is in violation of a direct and mandatory statutory provision, or which has had the effect of depriving this owner of a fundamental and substantial right, then our conclusion should be in its favor without regard to whether its property does or might completely escape the tax. Otherwise, no such result should obtain. Board of Com'rs of Tulsa County v. Sutton, 185 Okla. 665, 95 P. 2d 648, and Bonaparte, Co. Treas., v. American Vinegar Mfg. Co., 161 Okla. 54, 17 P. 2d 441.

Minute perfection of detail is not required. 61 C. J. p. 737, par. 919, states the general rule as follows:

"Unless there has been a failure to observe a mandatory statutory requirement intended for the protection of the taxpayer, the validity of an assessment roll, which is substantially correct, is not affected by errors, omissions, or irregular entries, which do not affect the substantial justice of the tax nor prejudice the rights of the taxpayer."

Our statutes required that this taxpayer submit data in writing to the assessing board. Chapter 104, p. 208, S. L. 1933; sec. 12409, O. S. 1931. It is clearly contemplated thereby that all necessary data be thus disclosed to enable the board to make a complete assessment. That return or report should include a disclosure of all taxable property owned, its value and situs. This record does not contain a copy of the return or report filed in this connection, but it is conceded that plaintiff thereby disclosed all its taxable property located in school district No. 22 as enlarged by the annexations. We are not advised of the minuteness of detail with which it was so shown. It is conceded, however, that the return did not disclose any effort or intention to further segregate the specific items of the property to lesser areas within the then district No. 22.

Thus this property came under actual scrutiny of the assessing board and was officially acted upon by it, and it doubtless. did, as was its duty, inform itself fully as to situs, extent and value of all such property.

The final record of that board's action appears in the tax rolls of the several counties as completed by the county assessors.

The State Auditor performs the ministerial function of informing the county assessor of the board's action. Section 12410, O. S. 1931. The county assessor is the proper ministerial official of the board and of the state, who performs the duty of completing the tax roll, which then becomes the final record of assessment. Section 12411, O. S. 1931. We agree that the county assessor is without power to make a record contrary to the action of the assessing board, or that he has discretionary powers of assessment in such a case as this.

The record made by him in this case, however, is not shown to be in conflict with the action of the state board. This appeal record contains no proof that the assessing board affirmatively fixed the taxing situs of this property other than as reflected by the final tax rolls as made to appear by the proper officer, the county assessor.

These final tax rolls did reflect a further segregation of the total valuations beyond that shown by the State Auditor's certificate, but it does not result in direct conflict therewith. Had the taxpayer been dissatisfied with the record of the state assessing board as made by the county assessor, we have no doubt that it might have applied for a correction. Apparently it was either satisfied that the final record so made did in fact reflect the action taken by the state board, or was willing to let the final record so stand, or was willing to allow an error which it had induced to remain uncorrected. In such case, the taxpayer will not be heard to complain in this kind of suit where no actual definite injury is claimed or shown.

In the Bonaparte v. American Vinegar Case, supra, it was held:

"A petition filed in a proceeding commenced under section 9971, C. O. S. 1921 (O. S. 1931, sec. 12665), which does not allege facts showing wherein the party commencing the action was injuriously affected by reason of the failure of the county assessor to publish notice containing the name and assessed value of the personal property of such party as required by section 9664, C. O. S. 1921, does not state facts sufficient in law to constitute a cause of action."

Having concluded that the record of the assessment as shown by the completed tax rolls is not shown to have been made in conflict with or contrary to the conclusions of the State Board of Equalization, and that therefore no void assessment has been shown, and plaintiff having failed to plead or prove any injury, fraud, or collusion, we consider the rule of the Bonaparte Case applicable here.

Affirmed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur.